UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CIGNA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-cv-00093-RLW |
| | ) | |
| AMY BRICKER and CVS HEALTH | ) | |
| CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR JOINT RULE 12(b)(1)
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

## I.    INTRODUCTION

"Federal courts are courts of limited jurisdiction. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Kessler v. Nat'l Enterprises, Inc.*, 347 F.3d 1076, 1081 (8th Cir. 2003) (quotation marks omitted); *see also Kuhl v. Hampton*, 451 F.2d 340, 342 (8th Cir. 1971) (explaining federal courts "were not established to mediate any and all types of complaints and alleged wrongs"). As such, a complaint that does not contain an adequate statement of jurisdictional facts is "fatally defective" and subject to dismissal under Rule 12(b)(1). *Ivey v. Frost*, 346 F.2d 115 (8th Cir. 1965) (per curiam). Such is the case here.

Plaintiff Cigna Corporation ("Cigna") asserts purely state-law claims for breach of contract, misappropriation of trade secrets under the Missouri Uniform Trade Secrets Act, tortious interference with contract, common law unfair competition, unjust enrichment and conversion against Defendants Amy Bricker ("Ms. Bricker") and CVS Health Corporation ("CVS") (collectively "Defendants"). Indeed, Cigna asserts only state law claims against CVS. The *only,* albeit deficient, basis that Cigna alleges for invoking the Court's federal subject matter jurisdiction over this state court employment dispute is a single, inadequately pled claim against Ms. Bricker alone under the Computer Fraud and Abuse Act ("CFAA")—a federal criminal statute that provides for a private right of action in certain very limited circumstances. Cigna alleges that this Court has subject matter jurisdiction because Ms. Bricker restored a company-issued cell phone to its factory settings on January 24, 2023 before returning it to Cigna. (Compl. ¶¶ 72-75.) Yet elsewhere, Cigna acknowledges it had already "cut off Bricker's access to its network and data" on or shortly after January 10, 2023. (*Id.* ¶¶ 69-70; *see also* ECF No. 5-2 (Arkus Decl.) ¶ 24.) Cigna hopes the Court will ignore the fact that it removed all of its business information from the

1

device ten days before telling Ms. Bricker to delete her personal information from the phone and return it to Cigna. According to Cigna, however, this factory reset, which was how Ms. Bricker had previously and routinely deleted personal data from Cigna-issued phones before returning them to Cigna, violated 18 U.S.C. § 1030(a)(5). As detailed below, Cigna's CFAA claim, an unwarranted effort to sling mud at Ms. Bricker, fails on the pleadings, and is refuted by the evidence.

First, Cigna has not sufficiently pled, and cannot prove, that Ms. Bricker's actions violated the CFAA. To do so, it must establish, among other things, that she "caused damage" when conducting the factory reset, and that she was "without authorization" to do so. Cigna fails on both fronts. Cigna pleads insufficient facts to support its claim that the factory reset caused it any damage, as the CFAA defines that term. The evidence establishes that Cigna terminated Ms. Bricker's access to its computer systems, including Cigna's email accounts and intranet, not later than January 14, 2023—ten days before the January 24 factory reset—and that there was no Cigna data or information stored on the re-set phone that was ever made unavailable to Cigna. Cigna's claim that Ms. Bricker acted "without authorization" fails as a matter of law under the recent United States Supreme Court decision in *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021). The factual record establishes that Ms. Bricker at all times had authorization to access her phone, was never instructed not to clear data from her phone, and, in fact, was authorized in advance and directed by Cigna's Senior Vice President of Human Resources to remove personal data from the phone before turning it over.

Cigna's CFAA claim also fails for an additional, independent reason: Cigna has not pled adequate factual support for its conclusory allegation that it suffered at least $5,000 in cognizable loss—a threshold amount required to state a private cause of action under the CFAA. The record

2

evidence refutes that Cigna sustained *any* harm, much less the statutory minimum amount of $5,000 in damages.

For all of these reasons, there is no colorable basis for Cigna to claim that Ms. Bricker violated the CFAA; the claim against her should be dismissed with prejudice, and with it the entirety of Cigna's case, over which, in the absence of Cigna's baseless CFAA claim, there is no federal subject matter jurisdiction. Because this case, from its very inception, only masquerades as a federal action, the Court should decline supplemental jurisdiction under 28 U.S.C. § 1367.

## II.    STATEMENT OF FACTS

### A.    CIGNA'S ALLEGATIONS, RELEVANT FACTS

Ms. Bricker tendered her notice of resignation to Cigna on January 10, 2023. (Compl. ¶ 69. *But see* Declaration of Amy Bricker, Exhibit 1 hereto, hereinafter "Bricker Decl.," ¶ 3 (stating she provided notice on January 9, 2023).) Thereafter, not later than January 14, 2023, Cigna cut off her access to its network and data, and, through its SVP, Human Resources Officer Melissa Arkus ("Ms. Arkus") directed that she not return to Cigna's offices, but that she make herself available as needed for transition purposes through her last day of employment on February 3, 2023. (Compl. ¶¶ 2, 70; Bricker Decl. ¶ 16 & Ex. B.) Cigna allowed Ms. Bricker to maintain her company-issued devices during this period, and, through Ms. Arkus, made arrangements with Ms. Bricker to collect these devices "prior to her last day of employment." (Compl. ¶ 71; ECF No. 5-2, Arkus Decl. ¶ 24; Bricker Decl. ¶ 16 & Ex. B.)  With specific regard to the iPhone in question, Cigna, through Ms. Arkus, told Ms. Bricker to keep it through her last day of employment, February 3, 2023. (Bricker Decl. ¶¶ 13-14 & Ex. B.)

On January 24, 2023, a Cigna security officer came to Ms. Bricker's home to return personal belongings that she had left in her office as of when, following her resignation, Cigna

3

directed her not to come to its offices again. (*Id.* ¶ 17; ECF No. 5-2, Arkus Decl. ¶ 24.) The security officer also came to Ms. Bricker's home to return to her certain personal data and documents that she had stored previously on a Cigna laptop computer and that Cigna had agreed to return to her on a thumb drive. (Bricker Decl. ¶ 17; ECF No. 5-2, Arkus Decl. ¶ 24.) For the first time, however, as Cigna's security officer stood in Ms. Bricker's foyer, he told Ms. Bricker that he was also instructed to retrieve the iPhone that Ms. Arkus had previously directed her to keep through February 3. (Bricker Decl. ¶ 17). Ms. Bricker phoned Ms. Arkus, seeking an explanation for the new request she turn over the iPhone before her last date of employment; Ms. Arkus provided no explanation, but she confirmed that she understood Ms. Bricker had personal information on the iPhone and directed Ms. Bricker to delete that personal information before turning the iPhone over to Cigna's security officer. (*Id.* ¶¶ 18-19).

Significantly, when Ms. Bricker was asked to return the phone on January 24, there was no business information on it, all such information having been removed when, not later than January 14, Cigna cut off all of Ms. Bricker's access to its systems and data. (*Id.* a¶¶ 13-14, 21-22; ECF No. 5-2, Arkus Decl. ¶ 24.) As a result of this action by Cigna, there were no company emails or attachments stored on or accessible through the phone, and the app that is necessary to access such company email and the company's intranet was disabled. (Bricker Decl. ¶¶ 13-14, 21-22). Further, even prior to Cigna disabling Ms. Bricker's access to its applications and systems, the phone was secured such that Ms. Bricker could not download or export any company information or documents, including that of Express Scripts or another Evernorth business, or Cigna, or print or store such information or documents elsewhere, including on the phone. (*Id.* ¶ 8). Ms. Bricker did not use the phone to conduct Express Scripts, Evernorth or Cigna business by text, so the only text messages on the phone were personal ones. (*Id.* ¶ 9).

4

On multiple prior occasions when Express Scripts or Cigna had issued updated or upgraded cellular phones to Ms. Bricker in the ordinary course of her employment, she restored those phones to factory settings to delete personal information before returning them.[1] (*Id.* ¶ 10). Express Scripts and Cigna directed this practice and never instructed Ms. Bricker not to follow it. (*Id.* ¶¶ 10, 20; *see* ECF No. 5-2, Arkus Decl. ¶ 24.) So, as Cigna's security officer waited in her home for the phone, Ms. Bricker restored it to factory settings to delete her personal data, then gave the phone to the security officer. (Bricker Decl. ¶ 22.) This is why "[u]pon receiving [Ms.] Bricker's iPhone, Cigna's information technology specialists noticed that the phone had undergone a factory reset." (Compl. ¶ 74.) Cigna nonetheless had a third-party forensic analysis done to "confirm[] that the phone [had, in fact,] been reset, effectively deleting all data on the phone." (*Id.* ¶ 75.)

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) contemplates dismissal of a claim or action where subject matter jurisdiction is lacking. A court may properly "dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) [when] the complaint [is] successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge to jurisdiction, "the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* The court may also, however, consider matters outside the pleadings in determining whether dismissal is appropriate under Rule 12(b)(1). *Osborn v. United States*, 918

---

[1] A factory reset on an Apple iPhone, is a keystroke function that can be accomplished by a layperson through the phone itself. https://support.apple.com/en-us/HT201274 ("Tap Settings > General > Transfer or Reset [Device] Then tap Erase All Content and Settings."). Apple recommends conducting a factory reset "before selling, giving away or trading your iPhone," https://support.apple.com/en-us/HT201351, as doing so "erases the information and settings on [the iPhone] and installs the latest version of iOS [] software." https://support.apple.com/en-us/HT201252. After, a factory reset, the iPhone "will start up to the welcome screen and prompt you to set the phone up" the same as if it were a brand new phone straight out of the box. https://discussions.apple.com/thread/252171025.

F.2d 724, 729 (8th Cir. 1990). When doing so, the court is empowered to "decid[e] for itself merits of jurisdiction claims" even in the presence of disputed issues of material fact. *Id.* "The party seeking to invoke federal jurisdiction . . . carries the burden [of establishing jurisdiction], which may not be shifted to another party." *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013).

Where, as here, the case involves an extremely limited grant of federal subject matter jurisdiction for a private claim under the CFAA, 18 U.S.C. § 1030(g), the inability of Plaintiff to successfully plead the elements of that claim, or to prove the truthfulness of its factual assertions made in support of that claim, are "threshold" jurisdictional questions. *See* 18 U.S.C. § 1030(a)(B)(i) (requiring a plaintiff to prove "loss . . . during any 1-year period . . . aggregating at least $5,000 in value" as precondition for individual CFAA claim); *Osborn v. United States*, 918 F.2d 724, 729-30 (8th Cir. 1990) (discussing threshold jurisdictional questions under analogous statutory requirement in Federal Tort Claims Act). "Jurisdictional questions, whether they involve questions of law or of fact, are for the court to decide at the outset, unless the jurisdictional issue is so bound up with the merits that a full trial on the merits is needed to resolve the question." *Magee v. United States*, 9 F.4th 675, 682 (8th Cir. 2021). Here, no full trial on the merits would ever be needed to resolve the jurisdictional questions presented. To the contrary, doing so would be a misuse of the federal court's resources, while dignifying a manifestly pretextual effort to invoke federal jurisdiction.

## IV.    ARGUMENT

The "CFAA is a criminal statute that was intended to create a cause of action against computer hackers." *Foley Indus., Inc. v. Nelson*, No. 4:21-00309-CV-RK, 2021 WL 5614775, at *3 (W.D. Mo. Nov. 30, 2021). While the CFAA is chiefly intended to provide criminal liability, a private party may bring a civil action for damages under the CFAA upon a showing of "loss." 18

U.S.C. § 1030(g); *Porters Bldg. Centers, Inc. v. Sprint Lumber*, No. 16-06055-CV-SJ-ODS, 2017 WL 4413288, at *2 (W.D. Mo. Oct. 2, 2017). To succeed on its CFAA claim against Ms. Bricker, Cigna must prove: (1) loss, (2) caused by, (3) a violation of Section 1030(a), and (4) conduct involving one of the factors in Section 1030(c)(4)(A)(i)(I)–(V). 18 U.S.C. § 1030(g). Cigna fails to adequately plead, and will never be able to prove, a CFAA claim against Ms. Bricker. Cigna's CFAA claim fails and should be dismissed, as detailed below, together with the remainder of this case under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

### A. CIGNA FAILS TO PLEAD OR PROVE A VIOLATION OF 18 U.S.C. § 1030(a)(5)(A).

Cigna alleges a violation of Section 1030(a)(5)(A) of the CFAA. Therefore, it must also establish that Ms. Bricker (1) "knowingly cause[d] the transmission of a program, information, code, or command," and as a result of such conduct, (2) "intentionally cause[d] damage" (3) "without authorization" (4) "to a protected computer." *Id.* § 1030(a)(5)(A). Cigna's complaint fails to state a claim for a Section 1030(a)(5) violation, nor can Cigna prove the second or third elements of such a violation against Ms. Bricker.

#### 1. Cigna Fails To Plead Or Prove That Ms. Bricker Intentionally "Caused Damage."

To state a claim under the CFAA for a Section 1030(a)(5) violation, Cigna must plead sufficient facts to support its claim that Ms. Bricker "caused damage" to a protected computer—in this instance, an iPhone. Damage is defined under the CFAA as an "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). In *Van Buren v. United States*, the United States Supreme Court recently clarified: "The statutory definitions of 'damage' and 'loss' thus focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data. Limiting 'damage' and 'loss' in this way makes sense *in a scheme 'aimed at preventing the typical consequences of*

7

*hacking.*'" 141 S. Ct. 1648, 1660 (2021) (emphasis added). Cigna's pleadings are insufficient to state such a claim against Ms. Bricker.

Cigna makes only conclusory allegations about the "damage" allegedly caused by the factory reset of Ms. Bricker's phone. (*See* Compl. ¶¶ 75, 77.) It alleges that the factory reset "effectively delet[ed] all data on the phone," including "Cigna's confidential information." (*Id.*) But Cigna does not specifically allege, nor can it establish, that any Cigna confidential information was even stored on the phone when it was reset, while Ms. Bricker's declaration establishes that when Cigna cut off her Cigna systems and data access not later than January 14, it accomplished what it intended to do—it removed all Cigna information, both mundane and confidential (if there was any) from the phone and Ms. Bricker's access. Cigna's remaining conclusory allegations of damage merely repeat the statutory terms. (*See id.* ¶¶ 117, 121.) Cigna does not state anywhere in its complaint what "data" or "confidential information" it claims was on the phone, the integrity or availability of which was impaired as a result of the factory reset. Notably, Cigna acknowledges that Cigna terminated Ms. Bricker's access to its network and data approximately ten days *before* it collected the phone on January 24.

Cigna does not claim, and cannot truthfully allege, that any of its information remained on the phone to be deleted as of the factory reset. None did. Ms. Arkus's and Ms. Bricker's declarations confirm that through Cigna's own actions, Cigna systems and communications were removed from the phone before the reset. (Bricker Decl. ¶¶ 13-14, 21, Ex. B; ECF No. 5-2, Arkus Decl. ¶ 24.) Cigna's security protocols prevented Ms. Bricker (or any employee) from downloading or exporting any company information or documents, or printing or storing such information or documents elsewhere, including on the phone. (Bricker Decl. ¶ 8.) Further, any data or information that exists on Cigna's servers, in its network, on another Cigna employee's device,

8

or in an iTunes backup or iCloud backup was not deleted by virtue of Ms. Bricker's phone being reset to factory settings. (*See* ECF No. 5-3, Dunn Decl. ¶ 7.) The factual record makes clear that a factory reset of Ms. Bricker's phone did nothing to impair the integrity or availability of any of Cigna's data, programs, systems or information. Tellingly, Cigna does not allege otherwise.

Cigna seeks to attach liability to Ms. Bricker under this federal criminal hacking statute, *ipso facto*, for allegedly initiating the factory reset of her phone, without any facts to support that as a result, Cigna lost any specific data or electronically stored information belonging to it. Under Cigna's mistaken interpretation of Section 1030(a)(5), an employee could be held liable under the CFAA anytime she deleted *anything* from a company-issued cell phone, regardless of the substance of the data deleted—be it a picture of her child, or a text message with her spouse, or a personal document she accessed on the phone. So long as the employee transmitted "a code or command" that resulted in "data" being deleted from her company-issued cell phone, under Cigna's version of the CFAA, she would be liable under Section 1030(a)(5). This is not the intended purpose of the CFAA. *See Van Buren*, 141 S. Ct. at 1660 (stating CFAA is aimed at preventing criminal hacking). Cigna must plead facts sufficient to establish the substance of the data or "confidential information" it claims was damaged by the factory reset. Its failure to do so speaks volumes and requires dismissal of the claim, and of this suit.

### 2. Cigna Fails To Plead Or Prove That Ms. Bricker Acted "Without Authorization."

Cigna must also prove that Ms. Bricker acted "without authorization" to succeed on its claim that she violation Section 1030(a)(5) of the CFAA. In *Van Buren*, the United States Supreme Court considered the definition of "without authorization" in resolving a circuit split about the definition of the phrase "exceeds authorized access" under Section 1030(a)(2) of the CFAA. 141 S. Ct. at 1658. The *Van Buren* Court sided with the Ninth Circuit and Sixth Circuit's interpretation

9

of the phrase "without authorization" as "protect[ing] computers themselves by targeting so-called outside hackers—those who 'acces[s] a computer without any permission at all.'" *Id.* at 1659 (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009), and citing *Pulte Homes, Inc. v. Laborers' Int'l Union of North Am.*, 648 F.3d 295, 304 (6th Cir. 2011)). The Court held that "an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Id.* at 1662. Under this interpretation of the CFAA, "liability under both clauses"—"without authorization" under Section 1030(a)(5) and "exceeds authorized access" under Section 1030(a)(2)—"stems from a gates-up-or-down inquiry—one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Id.* at 1659.

Although *Van Buren* was decided under a different sub-section of Section 1030(a), there is no reason to believe the Court would apply a different definition of the phrase "without authorization" to Section 1030(a)(5) than it did to Section 1030(a)(2). It is axiomatic that statutes are to be interpreted for internal consistency, and with particular respect to "terms that carry 'technical meaning[s].'" *Id.* at 1657 (quoting Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 73 (2012)). As the *Van Buren* court explained:

> "Access" is one such term, long carrying a "well established" meaning in the "computational sense"—a meaning that matters when interpreting a statute about computers. American Heritage Dictionary 10 (3d ed. 1992). In the computing context, "access" references the act of entering a computer "system itself" or a particular "part of a computer system," such as files, folders, or databases.

*Id.* at 1657-58. It is consistent with this definition to equate the phrase "without authorization" in Section 1030(a)(5) with the act of entering a computer which the individual does not have the privilege to access.

10

Applying this definition of "without authorization" to the facts here, Cigna's claim against Ms. Bricker fails as a matter of law. Cigna admits in its complaint that Ms. Bricker was authorized to use the phone in question, and that it consented to her continued possession of that phone for two weeks after she tendered notice of her resignation to Cigna. (Compl. ¶¶ 69-72.) Cigna has not alleged, and cannot plead, that Ms. Bricker was "without authorization" such that she accessed the phone "without any permission at all." *See Van Buren*, 141 S. Ct. at 1659.[2]

The factual record only further supports the conclusion that Ms. Bricker was not acting "without authorization" in violation of Section 1030(a)(5).  She was specifically authorized by a Cigna SVP, Human Resources to delete personal information from the phone before she performed the reset. (Bricker Decl. ¶ 16, Ex. B.) At that time the phone was devoid of Cigna content through Cigna's actions ten days before. All that was left to delete through the reset, was personal information of Ms. Bricker's, which she was specifically authorized to delete. This is far from the type of conduct the CFAA criminalizes.

### B.    CIGNA FAILS TO PLEAD AND CANNOT PROVE IT SUFFERED ANY LOSS, MUCH LESS A $5,000 LOSS.

In addition to failing to plead or prove that Ms. Bricker actually violated the CFAA, Cigna also fails to plead that it suffered cognizable losses sufficient to state a private cause of action under the CFAA. Section 1030(g) of the CFAA provides for a civil right of action for any "person who suffers damage or loss by reason of a violation of this section" provided that a civil action "may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). Cigna attempts to plead a claim under

---

[2] *See also United Rentals, Inc. v. Wilper*, 2022 WL 4120789, at *4 (D. Conn. Sep. 9, 2022) (applying *Van Buren* and dismissing a Section 1030(a)(5) CFAA claim brought against a former employee who wiped data from her company-issued cell phone because she had permission to use the phone and Section 1030(a)(5) "applies to outside hackers, meaning someone who has no rights to access the computer," and further dismissing the entire case for lack of subject matter jurisdiction).

11

Section 1030(c)(4)(A)(i)(I), which requires "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11).

Failure to adequately plead $5,000 in compensable losses in the complaint requires dismissal of the CFAA claim. *See Pinebrook Holdings, LLC v. Narup*, No. 4:19-CV-1562-MTS, 2022 WL 1773057, at *11 (E.D. Mo. June 1, 2022) (CFAA requires $5,000 in losses "to state a cause of action."); *see also Motorola Credit Corp. v. Uzan*, 2002 WL 31319932, at *3 (S.D.N.Y 2002). Likewise, failure of proof on this critical jurisdictional element is "fatal to" a CFAA cause of action. *Pearl Investments LLC v. Standard I/O Inc.*, 257 F. Supp. 2d 326, 349 (D. Me. 2003). Cigna fails on both fronts.

### 1.    Cigna Fails To Plead Facts To Support Its Claim That It Suffered Losses In Excess of $5,000.

Taking the complaint on its face, Cigna's allegations do not pass muster under the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as Cigna fails to allege sufficient facts to plausibly suggest that it suffered $5,000 in losses. Cigna's CFAA claim is based solely on Ms. Bricker having initiated a factory reset to a company cellphone before returning it to Cigna. (*See* Compl. ¶¶ 74-75.)

Cigna alleges that when Ms. Bricker returned her phone to Cigna, its "information technology specialists noticed that the phone had undergone a factory reset." (*Id.* ¶ 74.) As a result, Cigna claims "all data on the phone" was effectively deleted. (*Id.* ¶ 75.) Cigna makes no factual allegations as to the specific "data," "electronically stored information" and "confidential

12

information" it claims was actually stored on the phone prior to the factory reset, nor does it state facts to establish what, if any, "data," "electronically stored information" or "confidential information" it actually lost as a result of the factory reset of the phone. Cigna also does not allege facts to support its assertion that the alleged deletion of this unidentified data and information caused it *any* monetary damage, much less damages exceeding $5,000. Cigna's vague and conclusory references to "data," "electronically stored information" and "confidential information" that was allegedly deleted from the phone—even if true—do not present facts from which this Court can reasonably conclude that Cigna suffered $5,000 in compensable losses under the CFAA.

The sole factual allegation Cigna makes to support its claim that is suffered loss "in excess of $5,000" is that it had a "third-party forensic analysis" done on the phone to "confirm[] that the phone had been reset." (*Id.* ¶ 75.) This facially-implausible assertion is wholly insufficient to meet federal pleading standards on a threshold jurisdictional issue. It does not take a third-party forensic analysis to "confirm[]" that an iPhone has been reset to factory settings. (*See supra* n.1.) Unsurprisingly, Cigna's information technology specialists made that determination just by looking at the phone. (*Id.* ¶ 74.) But even taking Cigna's allegation as true, it is not plausible that a forensic analysis of a phone restored to factory settings and on which "all data" was deleted could cost $5,000, or anywhere near that sum, nor does Cigna plead as much.[3]

Cigna's other alleged losses do not help it reach the $5,000 threshold, as they are not supported by any allegations of fact. (*See id.* ¶ 120 (alleging loss including "the cost to Cigna of

---

[3] Had Cigna wondered whether the iPhone had been reset (which it likely did not given this was the customary manner of turning in a company-issued phone), it need only have asked Ms. Bricker, who would have confirmed the reset. While Cigna turning the phone over to a forensic expert was an unnecessary waste of resources, a factory reset undoubtedly could be detected and confirmed by such an expert (or any lay person) in seconds for little cost. In any event, Cigna does not allege that its forensic expert handed it a $5,000 bill to verify a factory reset of the iPhone.

responding to Bricker's violation . . . ; a damage assessment; the attempted restoration and recovery of unavailable data and electronically stored information that resided on [the phone] . . . ; and the investigation of Cigna's 'protected computer' and related systems . . ."). The Court need not accept such conclusory allegations as true. *See Iqbal*, 556 U.S. at 681. Under the *Twombly* plausibility standard, the Court must "draw on its judicial experience and common sense" in assessing the value of Cigna's claimed losses. *Am. Cent. Transp., Inc. v. Strickland*, No. 09-00649-CV-W-DGK, 2009 WL 10704945, at *4 (W.D. Mo. Nov. 24, 2009). Cigna's threadbare allegations of its alleged losses, in light of the facts, are insufficient to invoke federal jurisdiction under the CFAA.

### 2.    Cigna Has Failed To Prove It Suffered $5,000 In Compensable Losses.

In addition to its failure to plead facts to support is allegation that it suffered $5,000 in cognizable loss under the CFAA, Cigna also has not proved this jurisdictional fact. While the Court need not look beyond the face of the complaint to summarily dispense with Cigna's CFAA claim (and, in turn, this lawsuit as a whole) for the reasons just stated, the Court may also consider matters outside the pleadings to decide the merits of this jurisdiction claim, if it wishes. *Osborn*, 918 F.2d at 729. The record only fortifies the conclusion that Cigna's allegation that its losses exceed $5,000 is demonstrably false.

The affidavit of Michael Dunn, Cigna's third-party forensic analyst, filed in support of Cigna's pending Motion for a Temporary Restraining Order (ECF No. 5), is revealing both in what it says, and in what it omits, about Mr. Dunn's "analysis" (brief as it must have been) of Ms. Bricker's phone. Mr. Dunn states that his analysis confirmed that the phone had been "subject to a factory reset, which completely erased all of the available data and information from the device," but that such "deleted information may exist in iTunes backups or iCloud backups of this device." (ECF No. 5-3, Dunn Decl. at ¶ 7.) This confirms that the only information erased as a result of the

14

factory reset was data and information stored locally on the device, itself, while Ms. Arkus's and Ms. Bricker's declarations show that Cigna had already removed its systems and email from the phone before the reset, while Ms. Bricker also confirmed she did not conduct business via text using the phone. Further, the factory reset of the phone did not affect any data or information backed up on Cigna's servers, in its network, on another Cigna employee's device, or in an iTunes backup or iCloud backup of the phone. Again, Mr. Dunn appears not only to have refused to substantiate a loss to Cigna of anything, he seems to be confirming Cigna lost *nothing*.

Finally, while Mr. Dunn states he "created a forensic image of the iPhone using Magnet Axiom, Digital Forensic Software and conducted an Incident Response and Forensic Analysis" on the phone, he does not state what, if anything, he charged Cigna for this service. (*Id.* at ¶ 6.) This is a glaring omission, given Cigna's reliance on his third-party forensic analysis as the sole factual basis for reaching the $5,000 threshold for a CFAA claim. Cigna fails in its burden of proving this crucial jurisdictional fact, requiring dismissal. *See Jones*, 727 F.3d at 846.

## V.     CONCLUSION

Cigna brings this case against Ms. Bricker and CVS in federal court based solely on a CFAA claim against Ms. Bricker. For all of the foregoing reasons, that claim fails on the pleadings and on the merits and should be dismissed with prejudice. As Cigna cannot established that it may properly invoke the limited subject matter jurisdiction of this federal court, the Court should exercise its discretion under 28 U.S.C. § 1367, decline supplemental jurisdiction over Cigna's remaining state-law claims, and dismiss this action in its entirety under Rule 12(b)(1). *See Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (concluding that after finding the plaintiff's complaint failed to make out a federal claim, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims).

Dated: January 31, 2023

Respectfully submitted,

*Counsel for Ms. Bricker*
ARMSTRONG TEASDALE LLP

By: /s/ *Jeffrey L. Schultz*
Jeffrey L. Schultz #56553MO
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 259-4732 (phone)
(314) 621-5065 (fax)
jschultz@atllp.com

VEDDER PRICE PC

Nicholas Anaclerio (IL# 6187889)
*pro hac vice* forthcoming
Allison Czerniak (IL# 6319273)
*pro hac vice* forthcoming
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601-1003
(312) 609-7538 (Anaclerio phone)
(312) 609-7626 (Czerniak phone)
nanaclerio@vedderprice.com
aczerniak@vedderprice.com

*Counsel for CVS*
DOWD BENNETT LLP

By: /s/ *John D. Comerford*
John D. Comerford #60164MO
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7311 (phone)
(314) 863-2111 (facsimile)
jcomerford@dowdbennett.com

FOLEY HOAG LLP

Michael L. Rosen (BBO# 559954)
*pro hac vice* forthcoming
Emily J. Nash (BBO# 696460)
*pro hac vice* forthcoming
Matthew F. Casassa (BBO# 707012)
*pro hac vice* forthcoming
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1231 (Rosen phone)
(617) 832-3067 (Nash phone)
(617) 832-1116 (Casassa phone)
mrosen@foleyhoag.com
enash@foleyhoag.com
mcasassa@foleyhoag.com

16

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2023 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.

*/s/ Jeffrey L. Schultz*