DocuSign Envelope ID: 8FB60D8C-3B52-4151-B964-90E92E49BA27

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CIGNA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:23-cv-0093-JMB |
| | ) | |
| vs. | ) | |
| | ) | |
| AMY BRICKER and CVS HEALTH CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF AMY BRICKER**

In accordance with the provisions of 28 U.S.C. § 1746, Amy Bricker, does hereby certify, under penalty of perjury, that the following is a true and correct statement of fact:

1.      I am a competent adult more than 21 years of age; am under no disability or impairment affecting my capacity to recall, appreciate and truthfully communicate those facts and events of which I have personal knowledge; have personal knowledge of the following facts and events; and, if called upon to do, so could and would testify truthfully and competently in open court to the same.

2.      My last Federal Form W-2 for 2022 states that my employer is Express Scripts Strategic Development, Inc. ("Express Scripts"). My primary work station for Express Scripts, an affiliate of the Plaintiff Cigna Corporation ("Cigna"), is, and has always been St. Louis, Missouri. I am a citizen of the State of Missouri, where I maintain my permanent residence and live with my husband and daughters in the St. Louis, Missouri metropolitan area.

3. I gave notice of my resignation on January 9, 2023 (my "Resignation Date"). At that time I offered, and Express Scripts accepted my offer, to continue working so as to assist in accomplishing an orderly, effective and businesslike transition of my employment duties and responsibilities through and including Friday, February 3, 2023, which is still scheduled to be my last date of employment with Express Scripts. I have accepted employment with CVS Health, and my planned first date of active employment with CVS Health is February 20, 2023.

4. My last employment title as of my Resignation Date, was that of President, Express Scripts. Express Scripts is a pharmacy benefit management company ("PBM"), and one of several, distinct business units that are parts of a business Cigna calls "Evernorth." On January 18, 2023, Evernorth, which was described in its press release as "the health services business of Cigna Corporation," publicly announced that Adam Kautzner was appointed my successor as President of the Express Scripts PBM. (See, https://www.prnewswire.com/news-releases/evernorth-names-adam-kautzner-president-express-scripts-301724762.html )

5. In general, PBM businesses, such as Express Scripts, contract with payor clients, such as employers, unions, governmental payors and health plans ("Payor Entities"), to provide prescription drug benefit plans to such Payor Entities' individual participating members and their families. Such contracts typically have fixed durations of 2, 3 or more years before they are renewed, at which time the Payor Entities' business typically become subject to competition between PBMs for the business, for example through request-for-proposal processes. Prior to the expiration of such PBM-Payor contracts, the contracting PBM's relationship with the payor is exclusive. PBMs "customers" are not individual consumers; their customers are Payor Entities. PBMs also contract with brand pharmaceutical companies for discounts or rebates, in exchange for formulary placement or preferred status on drug lists that are then adopted by Payor Entities'

so that their members may access the preferred brand drugs at lower copay or co-insurance (as compared to a non-preferred brand drugs on the drug list) , and PBMs likewise establish contracts with retail pharmacies that become part of the pharmacy networks at which Payor Entities' enjoy discounts for the fulfillment of prescriptions dispensed to individual participating members that may go to purchase their prescription medications within such pharmacy networks.

6.      I was appointed President of Express Scripts in 2020. In that position, my duties and responsibilities were virtually entirely devoted to running the Express Scripts PBM business as that PBM business' senior-most executive leader.

7.      I was formerly employed by Express Scripts, Inc. ("ESI"), the PBM business, which Cigna acquired and absorbed in December 2018, and has since called "Express Scripts." I began my ESI employment in 2010, and I was continuously employed by ESI in various capacities (including VP of Pricing and Supply Chain Strategy, SVP Supply Chain), all of which were devoted to ESI's PBM business, through the date Cigna acquired ESI. Following Cigna's acquisition of ESI, I continued working in the Express Scripts PBM business as SVP Supply Chain until my advancement to the role of President of the PBM in 2020.

8.      During my ESI and Express Scripts employment, and through the afternoon of January 24, 2023, I regularly used two iPhone cellular phones, one primarily for personal use (my "Personal iPhone") and one issued by Express Scripts for business correspondence (my "Business iPhone"). I did not conduct Express Scripts business through the use of text messages with either phone. Instead, I used the Business iPhone to access and to send business emails that I know were all stored in Express Scripts or Cigna's company servers. The information systems I have used throughout my Express Scripts employment were configured so that I could access Express Scripts

documents via the Business iPhone through company-installed software on that Business iPhone, but I could not download or export any company information or documents, including that of Express Scripts or another Evernorth business, or Cigna, or print or store such information or documents elsewhere, including on the Business iPhone. These features secured for Express Scripts and/or Cigna, and secured to their control, Express Scripts, Evernorth, and Cigna communications, documents and information.

9.    While I conducted all of my Express Scripts-related correspondence using the Business iPhone, I did store certain personal information, such as family photos, and personal banking applications, among others applications, on the various Business iPhones that were assigned to me during my Express Scripts employment, including the Business iPhone that was in my custody from the Resignation Date through January 24, 2023. I also sometimes accessed personal email in my private Gmail account via the Business iPhone. I also regularly received personal text messages from family and friends on my Business iPhone. This is because I was almost constantly in possession of this device and most responsive to communications sent to it.

10.    At various times during my Express Scripts /ESI employment, Express Scripts /ESI assigned to me a new and updated Business iPhone. When I was assigned an updated Business iPhone, the practice, which I believe ESI or Express Scripts initially directed me to follow and never countermanded, would be to restore the Business iPhone being replaced (a "Retired Business iPhone") to factory settings so as to remove from it any personal data, after which I returned the Retired Business iPhone to Express Scripts' information technology group. I followed this practice on multiple occasions with multiple Retired Business iPhones, including during the period from December 2018 through my Resignation Date. At no time did Express Scripts, Cigna, Evernorth,

Page 4

or specifically anyone in Express Scripts, Evernorth's or Cigna's IT or human resources groups, direct me not to restore a Retired Business iPhone to its factory settings before returning it.

11.    Melissa Arkus ("Ms. Arkus") is, and for some time has been, SVP Human Resources for Cigna's Evernorth business. Not long after tendering my resignation and at various times on and after the Resignation Date, I communicated with Ms. Arkus orally and in writing about Express Scripts, Evernorth's and Cigna's expectations of and directions to me throughout my notice period from January 9, 2023 until my last scheduled date of employment, February 3, 2023.

12.    Following my discussions with Ms. Arkus and in furtherance of my offer to assist in accomplishing an orderly, effective and businesslike transition of my employment duties and responsibilities, on January 10, 2023, I accessed an excel document on the Cigna system containing contact information for Express Scripts's Top Clients, which includes the client name, and the contact person's name, title, email and cell phone number. Express Scripts relied on the information in this document when making outreach on important news, like, for example, announcing a new president of a business unit. I updated the Top Clients list with contact information known to me and sent that document to Ms. Arkus, to ensure she had the most up-to-date client information prior to my departure. I told Ms. Arkus I would do this before I did it, and she agreed it was appropriate. I discussed with Ms. Arkus having the accounts team verify all of the information in the Top Clients list before having the new President or others rely on it. To that end, on January 16, 2023, Ms. Arkus sent me an email with "additional information relative to our communication plans," in which she stated in regards to the Top Clients list, "[w]e are working through the transition list and expect Adam [Kautzner] to connect with you later this week to

discuss open items." A true and complete copy of this email (with my personal email address redacted) is attached to this Declaration as Exhibit A.

13. On January 13, 2023, 3:35 p.m. Ms. Arkus sent me an email from her Cigna email (Melissa.Arkus@cigna.com) address to my personal Gmail account. A true and complete copy of this email (with my personal email address redacted) is attached to this Declaration as Exhibit B. In her January 13 email, Ms. Arkus, among other things, confirmed that my separation date was to be Friday, February 3, 2023, and with specific regard to my information technology, systems and devices access, Ms. Arkus stated:

> "System and Document Access: You will no longer have access to emails or our IT system as of midnight tonight. Similarly, your site access will be shut off. *We will work with Taryn to make arrangements to collect any of your IT equipment except for your iPhone during your transition period* and coordinate delivery of your personal belongings that are in the office. If you have any hard copies of documents in your possession outside of the office, please return those as well with your equipment." (emphasis added)

14. From the bold and italicized language above, I understood that Ms. Arkus, Express Scripts, Evernorth and Cigna expected and wanted me to retain the Business iPhone in my possession on January 13 through my last date of employment, February 3. As Ms. Arkus had stated in her January 13 email, my access to emails and systems was entirely eliminated by January 14. As of that date, all business emails and any attachments to them were gone from the Business iPhone, I believe, as the result of the complete email and IT systems access shut-off Ms. Arkus referenced in her above January 13 email to me.

15. Responding to Ms. Arkus' January 13 message at 4:44:41 p.m. on January 13, I stated:

> "Note, I do have personal records and documents on my desktop that have been saved over the years, including financial documents, tax documents, photos,

Page 6

investment information, etc. I do not consent to Cigna accessing or keeping these documents and all should be returned to me. Please confirm your understanding and instruct on how that will be accomplished."

16.     Ms. Arkus did not disagree with or dispute my above statements regarding the privacy of my personal information on my work desktop computer. Likewise, she did not say that any company policies were inconsistent with my statement about the private information I had stored on company media, my assigned desktop computer. Instead, on January 13, 2023 at 6:47 p.m., she sent me another email (see, Ex. B), which stated, in part, "I will work with Exec IT to support you in transferring your personal files. We will need to arrange a time for them to come to your house to do this, and they can pick up your IT equipment at that time." On January 17, 2023 at 2:50 p.m., Ms. Arkus sent me another email (see, Ex. B) confirming that the company's Executive IT personnel would come to my home to remove my personal files from my laptop computer and leave those personal files with me and take the computer. This meeting in my home took place as scheduled, on January 19, 2023. During this meeting in my home, however, company IT personnel said that they could not remove my personal files and photos, so they took the computer with them, claiming that they needed to take the computer back to the office, but that they would download the specified personal documents and photos and send me a thumb drive containing those overnight. They did not actually do this, and I did not receive my personal data until the afternoon of Tuesday, January 24, 2023.

17.     On the afternoon of Tuesday, January 24, 2023, Cigna Director of Security Andre Edison ("Mr. Edison") appeared at my home to return to me personal belongings that I had left behind in my office when, following my resignation, Express Scripts directed me not to return to its offices. Mr. Edison was also there to return to me a thumb drive storing my personal files and photos that company IT had removed from my previously-assigned work laptop computer. Mr.

Edison told me that he was instructed to collect my Business iPhone, and to give to me a replacement Business iPhone. This was the first I had heard that Express Scripts, Evernorth or Cigna wished for me to return the Business iPhone before February 3.

18.     Confused that Mr. Edison's request to exchange Business iPhones was inconsistent with Ms. Arkus' previous directions that I should keep the Business iPhone in my possession on the Resignation Date through February 3, I called Ms. Arkus on her cell phone while Mr. Edison (whom I have known for years) waited in my foyer.

19.     Ms. Arkus, with whose voice I am familiar from numerous prior interactions over a number of years, answered my call directly. After greeting her, I told her than Mr. Edison was in my home and requesting that I turn over the Business iPhone, and I asked her for clarification because Mr. Edison's request was inconsistent with Ms. Arkus' January 13 written directions to me that I keep the Business iPhone through February 3, and I did not understand why this had changed. Ms. Arkus provided no explanation for the change. Instead, she repeated that I should give the Business iPhone to Mr. Edison. Ms. Arkus also said that she knew I had personal information on the Business iPhone that I was being instructed to give to Mr. Edison, and she specifically told me to delete my personal information from that Business iPhone before turning it over to Mr. Edison.

20.     At no time during this call, or at any other time, did Ms. Arkus or anyone from Express Scripts, Evernorth or from Cigna, tell me that I should leave any information on the Business iPhone that I was instructed to give to Mr. Edison. At no time during this call, or at any other time, did Ms. Arkus or anyone from Express Scripts, Evernorth or from Cigna, direct me not to restore the Business iPhone to factory settings (as I had done on numerous prior occasions with

prior Retired Business iPhones) before giving it to Mr. Edison. At no time during this call, or at any other time did Ms. Arkus, or anyone from Express Scripts, Evernorth or from Cigna, give me any other directions regarding the Business iPhone that I was told to return to Mr. Edison. In fact, no one at Express Scripts, Evernorth or from Cigna, including Ms. Arkus, has ever directed or instructed me that I should leave any contents on the Business iPhone that I turned over to Mr. Edison on January 24.

21.    It never occurred to me, and it still makes no sense to me, that I would (while Mr. Edison was waiting in my home), make Mr. Edison wait for me to examine the entire contents of the Business iPhone to selectively delete my personal and private information from it. By this time, as the result of Express Scripts and Cigna having terminated my company information systems access on January 14, 2023, there were no company emails stored on or accessible through the Business iPhone, and the app that is necessary to access such company email and the company's intranet was disabled. While no Express Scripts, Evernorth or Cigna communications or documents were accessible via the Business iPhone at this time, I understand that all such communications and documents were replicated at all times on Express Scripts or Cigna's servers and email systems, and on the devices of those with whom I had exchanged such email communications. Again, I did not use the Business iPhone that I gave to Mr. Edison on January 24 to conduct Express Scripts, Evernorth or Cigna business by text message, as I have previously informed members of Cigna's in-house commercial litigation legal team.

22.    Consequently, I elected the speediest and only method I had employed in the past to remove my personal information from the Business iPhones that were assigned to me. I restored this Business iPhone to factory settings, then turned it over to Mr. Edison. As the result of IT measures Express Scripts or Cigna previously took, according to Ms. Arkus as of midnight on

January 14, 2023, I did not believe on January 24, 2023, and I do not believe now, that the factory reset deleted anything from the Business iPhone other than my personal information, which Ms. Arkus told me I should remove from the Business iPhone before giving it to Mr. Edison. As to any Express Scripts, Evernorth or Cigna business information or communications previously stored in the Business iPhone before January 14, 2023, I believe that all of these were securely kept on Express Scripts or Cigna's servers, and accessible to Express Scripts, Evernorth and Cigna before, during and after the January 24, 2023 factory reset.

23. In restoring the Business iPhone to factory settings before handing it over to Mr. Edison, I had no intention of making any Express Scripts, Evernorth or Cigna business information unavailable to Express Scripts, Evernorth or Cigna, and I do not believe that I ever did make any such business information unavailable to Express Scripts, Evernorth or Cigna in so doing.

24. Paragraph 77 of Cigna's Complaint against me and CVS Health alleges that: "[u]pon information and belief, Bricker is responsible for the deletion of Cigna's confidential information, which was not authorized and was conducted by Bricker in secret." I do not know what "information" Cigna claims to have that could prompt it to believe that I am responsible for secretly, and without authorization deleting any Cigna confidential information from the Business iPhone or from any other device at any time, but I categorically deny doing so and know this allegation to be false. At no time, including during the period between the Resignation Date and my return of the Business iPhone, did I delete any non-personal information or data, including confidential information belonging to Express Scripts, Evernorth or Cigna, from the Business iPhone. For the reasons already stated, I do not believe the Business iPhone contained any information belonging to Express Scripts, Evernorth or Cigna, including confidential information,

at the time of the factory reset, which I believe to have deleted only my personal information from that phone, as I was expressly authorized by Ms. Arkus to do.

I, Amy Bricker, certify under penalty of perjury that the foregoing is true and correct.

Executed on January 30, 2023

DocuSigned by:

Amy Bricker

6F905D42048847D...

Amy Bricker

DocuSign Envelope ID: 8FB60D8C-3BF2-4151-B964-90E92F49BA27

# **EXHIBIT A**

**From:**
**To:**
**Subject:**
**Date:**



**From:** "Arkus, Melissa M    W361A" <Melissa.Arkus@cigna.com>
**Date:** January 16, 2023 at 4:26:43 PM CST
**To:** Amy Bricker
**Subject: Follow up**

Amy,

Following is additional information relative to our communication plans.

As I shared previously, Eric will inform the PBM leadership team of your decision to leave the company on Tuesday. He will share that Adam Kautzner will assume leadership of the PBM.
We will also leverage Tuesday to inform key clients (i.e. Prime) and Kristen Julason Damato will confidentially notify JC Scott (PCMA) so that appropriate adjustments can be made for the Board meeting on Wednesday.

The broader organizational announcement will be released internally on Wednesday. In addition, we will release an external announcement naming Adam as the new PBM President. The communication from Eric will indicate your decision to leave the organization, and Adam's appointment. No additional details around your decision will be provided.

As previously requested, would ask you refrain from discussing your decision with our employees, clients, consultants or customers until we have the opportunity to complete our communications.

**We are working through the transition list and expect Adam to connect with you later this week to discuss open items.**

Thank you -- Please let me know if any questions.

Melissa

-----------------------------------------------------------------------------
CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information.  This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly.  Please delete it from your files if you are not the intended recipient.  Thank you for your compliance.  Copyright (c) 2022 Cigna
=============================================================================

DocuSign Envelope ID: 8FB60D8C-3BF2-4151-B964-90E92F49BA27

# EXHIBIT B

---------- Forwarded message ----------
From: **Amy Bricker** ████████████
Date: Tue, Jan 17, 2023 at 2:53 PM
Subject: Re: [External] Re: Follow up
To: Arkus, Melissa M W361A <Melissa.Arkus@cigna.com>

Sounds good. Thx

Sent from my iPhone

> On Jan 17, 2023, at 2:50 PM, Arkus, Melissa M W361A <Melissa.Arkus@cigna.com> wrote:

Amy,

Confirming that Exec IT Support for Thursday @ 9:00 am CST

Michael.Dicesare@Cigna.com leads the ESS team and can be your point of contact if something changes  Sorry for the confusion

Let me know if any questions

Thanks

Melissa

**From:** Amy Bricker ████████████████
**Sent:** Tuesday, January 17, 2023 3:20 PM
**To:** Arkus, Melissa M W361A <Melissa.Arkus@Cigna.com>
**Subject:** Re: [External] Re: Follow up

Hi Melissa

I didn't hear from you so didn't realize you were sending them for sure.

Would Thursday around 9am work? Or Friday before 12?

Amy

On Tue, Jan 17, 2023 at 2:17 PM Arkus, Melissa M W361A <Melissa.Arkus@cigna.com> wrote:

> Hi Amy,
>
> Exec IT was at your house between 10:10-10:40 but no one was home. Let me know a better time this week and we'll coordinate accordingly.

Thanks.

Melissa

---

**From:** Amy Bricker ███████████████
**Date:** January 13, 2023 at 6:49:52 PM CST
**To:** Arkus, Melissa M W361A <Melissa.Arkus@Cigna.com>
**Subject:** Re: [External] Re: Follow up

Tuesday between 10-12 works best. Thanks

Amy

Sent from my iPhone

> On Jan 13, 2023, at 6:47 PM, Arkus, Melissa M W361A <Melissa.Arkus@cigna.com> wrote:

Amy,

I will work with Exec IT to support you in transferring your personal files  We will need to arrange a time for them to come to your house to do this, and they can pick up your IT equipment at that time

Let me know if there is a window of time on Tuesday or Wednesday that works best for you

Melissa

---

**From:** Amy Bricker ███████████████
**Sent:** Friday, January 13, 2023 5:45 PM
**To:** Arkus, Melissa M W361A <Melissa.Arkus@Cigna.com>
**Subject:** Re: [External] Re: Follow up

Please see below.

Amy

Sent from my iPad

> On Jan 13, 2023, at 3:46 PM, Arkus, Melissa M W361A <Melissa.Arkus@cigna.com> wrote:

Amy,

Correct - Eric will communicate to the team.

Melissa

**From:** Amy Bricker ██████████████
**Date:** January 13, 2023 at 4:44:41 PM EST
**To:** Arkus, Melissa M W361A <Melissa.Arkus@Cigna.com>
**Subject:** [External] Re: Follow up

Melissa

So to confirm, I will NOT join on Tuesday for team communication?

This is new news

Amy

Sent from my iPhone

On Jan 13, 2023, at 3:35 PM, Arkus, Melissa M W361A <Melissa.Arkus@cigna.com> wrote:

Amy,

Per our discussion yesterday, sending over some details you requested:

1.  Separation Date:  Friday February 3, 2023.

2.  System and Document Access:  You will no longer have access to emails or our IT system as of midnight tonight.  Similarly, your site access will be shut off.   We will work with Taryn to make arrangements to collect any of your IT equipment except for your iPhone during your transition period and coordinate delivery of your personal belongings that are in the office.  If you have any hard copies of documents in your possession outside of the office, please return those as well with your equipment.

 Note, I do have personal records and documents on my desktop that have been saved over the years, including financial documents, tax documents, photos, investment information, etc.  I do not consent to Cigna accessing or keeping these documents and all should be returned to me.  Please confirm your understanding and instruct on how that will be accomplished.

3.  Transition Period:

- Eric will inform the Evernorth and PBM leadership teams of your resignation on Tuesday, January 17th. We will communicate more broadly internally and externally on Wednesday, January 18th. Would ask you to not share/discuss your decision until we have had the chance to communicate.

- We will follow up relative to plans for the PCMA Board meeting.

On the first two bullets regarding communication, I am requesting that the communications you are distributing internally and externally be shared with me in advance and that I be given the opportunity to provide input as to their composition.

Regarding the 1/18/23 comms, what are you planning?  Specifically to whom will those be directed and again, what precisely are you communicating about my departure?

- We will let the team and others know that you are available by phone only for transition-related questions until Friday, February 3rd.

- You should no longer make or direct any decisions on behalf of Cigna, Evernorth or on behalf of any subsidiary or affiliate, unless Eric Palmer specifically asks you to do so.

- You should no longer represent Cigna, Evernorth or on behalf of any subsidiary or affiliate on any meeting, virtual or in person, unless Eric Palmer specifically asks you to do so.

- If you are asked to do any of the above from someone other than Eric Palmer, please re-direct to Eric and me.

- No one should be communicating to you, nor should you use, your personal email or personal text to discuss or share any business or transition related information. We may use your personal email to exchange on HR related matters.

- You will continue to be paid and receive benefits as though your remained actively employed during this time. You will also continue to be subject to all of Cigna's policies and procedures applicable to our employees during this time.


If you have any questions, let me know.


Melissa


-------------------------------------------------------------------------------
CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright (c) 2022 Cigna
===============================================================================

-------------------------------------------------------------------------------
CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright (c) 2022 Cigna
===============================================================================

-------------------------------------------------------------------------------
CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright (c) 2022 Cigna
===============================================================================

-------------------------------------------------------------------------------

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information.  This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly.  Please delete it from your files if you are not the intended recipient.  Thank you for your compliance.  Copyright (c) 2022 Cigna
==============================================================================

----------------------------------------------------------------------------
CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information.  This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly.  Please delete it from your files if you are not the intended recipient.  Thank you for your compliance.  Copyright (c) 2022 Cigna
==============================================================================