UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CIGNA CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:23-CV-93 RLW |
| | ) |
| AMY BRICKER, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

This matter came before the Court on Plaintiff Cigna Corporation's ("Cigna") Motion for Temporary Restraining Order and Preliminary Injunction against Defendant Amy Bricker. (ECF No. 4). Defendant Bricker opposes the Motion, which is fully briefed.[1] On February 15, 2023, the Court heard oral argument of counsel on Cigna's Motion for Temporary Restraining Order. The Court has reviewed the Third Amended Complaint; the Motion for Temporary Restraining Order and its supporting memoranda and exhibits, including the Declarations of Eric Palmer and Melissa Arkus; and Defendant Bricker's opposition memorandum and exhibits, including the Declarations of Defendant Bricker, Karen Lynch, and Laurie Havanec. Being fully advised in the premises, the Court grants Cigna's Motion for Temporary Restraining Order against Defendant Bricker as follows:

---

[1] Cigna's Motion for Temporary Restraining Order is directed to Defendants Bricker and CVS Health Corporation. In Plaintiff's Third Amended Complaint, Cigna substituted Defendant CVS Pharmacy, Inc. for CVS Health Corporation. Accordingly, the Court denied Cigna's Motion for Temporary Restraining Order as moot as to CVS Health Corporation. (ECF No. 49). The motion remains pending as to Defendant Bricker only. Defendant CVS Pharmacy, Inc. appeared at the hearing through counsel and was allowed to submit argument opposing Cigna's Motion for Temporary Restraining Order.

*Background*

Cigna presented evidence, by way of declarations and exhibits, that Defendant Bricker is the former President of Express Scripts, which is a pharmacy benefits manager ("PBM"). Cigna acquired Express Scripts in 2018. Express Scripts is part of Evernorth, a wholly owned subsidiary of Cigna Corporation first brought to market in September 2020. (ECF No. 5-1 at 1-2, ¶¶ 4-5). Through Evernorth, Cigna sells an array of health services, including pharmacy benefit management, medical benefit management, care solutions, and data analytics services.

After becoming President of Express Scripts in December 2020, Defendant Bricker signed multiple non-competition agreements with Cigna prohibiting her, during her employment and for a period of two years following her employment, from among other things performing any services for any of Cigna's industry competitors, as well as prohibiting her from disclosing Cigna's confidential, proprietary, and/or trade secret information. (ECF No. 5-2 at 3-4, ¶¶ 14-19 and No. 50, Exs. B-N).

Cigna attached to its Third Amended Complaint a copy of Cigna's Confidentiality, Non-Competition and Non-Solicitation Agreement signed by a Cigna representative and Amy Bricker on February 24, 2021. (ECF No. 50, Ex. N). The agreement contains the following provision:

> [Amy Bricker] agrees that, during the Restricted Period and in any Restricted Area, [Amy Bricker] shall not, directly or indirectly by assisting, provide services to a Competitor of [Cigna]. [Amy Bricker]'s agreement not to provide such services to a Competitor applies regardless of whether [Amy Bricker] does so as an employee, owner, partner, principal, advisor, independent contractor, consultant, agent, officer, director, investor, or shareholder.

(Id. at 2).

Under the terms of Cigna's Confidentiality, Non-Competition and Non-Solicitation Agreement, "Competitor" is defined as follows.

> "Competitor" means any person, entity or organization engaged (or about to become engaged or preparing to become engaged) in a business similar to, or that competes with, the business of the Company, including without limitation any person or organization that provides any product or service that is similar to or competes with any product or service which has been offered or provided by the Company at any time during the twenty-four months preceding Employee's termination of employment.

(Id. at 6).

Competitor is further defined to provide that any business that provides pharmacy benefits management, pharmaceutical products and ancillary services, prescription infusion drugs and related services, insurance, "population health management products and services," medical benefits management, "behavioral health, care delivery, and care enablement products and services," and "health care related data and advanced analytics and applied innovation products and services" is a competitor of Cigna within the meaning of the Agreement. (Id.)

Defendant Bricker entered into these restrictive covenants in exchange for significant promotions, compensation, and lucrative stock grants. (ECF No. 5-2 at 3-5, 14-22 and No. 50, Exs. B-N). Defendant Bricker is one of only sixteen employees in the entire Cigna enterprise subject to the same non-competition restrictions, which are reserved for the company's top executives. (ECF No. 5-2 at 5, ¶ 20).

Cigna also presented evidence that Defendant Bricker was privy to confidential and/or trade secret information through her employment within the Cigna enterprise and her position on the Evernorth Senior Leadership Team, which was not limited to Express Scripts or Cigna's PBM business. (ECF No. 5-1, at 9-10, ¶ 34). According to evidence in the record, the Evernorth Senior Leadership Team has convened weekly for meetings with Evernorth's CEO; monthly to discuss Evernorth's financials across business units; in-person for a full-day meeting every month; and quarterly for extended meetings, including relating to core business reviews across Evernorth

businesses; and as needed to review key strategic information and drive decisions regarding Evernorth's suite of products and services. (ECF No. 5-1 at 3-6, ¶¶ 13-23). Through the restrictive covenants Defendant Bricker signed, she acknowledged and agreed that she was in receipt of Cigna's confidential information, including but not limited to trade secrets, and that Cigna would be irreparably harmed if such information was used or disclosed for the benefit of a competitor. (See ECF No. 50, Ex. N at 4).

Cigna further presented evidence that on January 9, 2023, Defendant Bricker resigned from the Cigna enterprise to join CVS Pharmacy, Inc. ("CVS Pharmacy"), as its Chief Product Officer–Consumer, a position that did not exist previously and was created specifically for Defendant Bricker. (ECF No. 5-2, at ¶ 23). The parties do not dispute that CVS Pharmacy is a competitor of Cigna under the terms of the Confidentiality, Non-Competition and Non-Solicitation Agreement. In her new position at CVS Pharmacy, Defendant Bricker would report to the CEO of CVS Health Corporation, "which is a holding company and the ultimate parent entity of the CVS health family of entities." (ECF No. 40-2 at 1, ¶1). Defendant Bricker would also sit on CVS Health Corporation's Executive Leadership Team, alongside the highest level of executives from all entities of CVS Health Corporation. (Id. at 9, ¶ 30).

Defendant Bricker's counsel argued at the February 15, 2023 hearing that her non-competition agreement with Cigna is overbroad in scope and length; that she is not in possession of any of Cigna's confidential information and/or trade secrets; and if she were, they would be limited to Express Scripts and pharmacy benefits management. Defendant Bricker also argued that her position at CVS Pharmacy will be firewalled from CVS Health Corporation's PBM, Caremark, and in her new role she would not have the opportunity to disclose Cigna's confidential information and/or trade secrets, nor would she do so.

Cigna asks the Court to "require [Defendant] Bricker to honor her contractual commitments so that Cigna's legitimate business interests can be protected." It states that injunctive relief is "necessary to prevent CVS [Health Corporation] from carrying through on its publicly announced intention to have [Defendant] Bricker begin the position it created for her on its Executive Leadership Team in February [2023]." (ECF No. 5 at 4).

*Temporary Restraining Order Standard*

In determining whether to issue a temporary restraining order, the Court must consider four factors: (1) the likelihood the moving party will succeed on the merits, (2) the threat of irreparable harm to the moving party; (3) the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. Kroupa v. Nielsen, 731 F.3d 813, 818 (8th Cir. 2013); see also Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). The inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113.

The likelihood of success is the most important factor. Roudachevski v. All-Am. Care Centers, Inc., 648 F.3d 701, 706 (8th Cir. 2011). This factor directs courts to ask whether the party requesting a preliminary injunction has a "fair chance of prevailing." Planned Parenthood Minn., N. Dak., S. Dak. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). Even when a plaintiff has a strong claim on the merits, however, "[f]ailure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction." Phyllis Schlafly Rev. Trust v. Cori, 924 F.3d 1004, 1009 (8th Cir. 2019) (quoted case omitted). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). The

moving party bears the burden to establish the need for injunctive relief. Chlorine Institute, Inc. v. Soo Line R. R., 792 F.3d 903, 914 (8th Cir. 2015).

*Discussion*

As discussed with the parties at the hearing, and upon review of the record, the Court is satisfied at this stage that Cigna has presented enough evidence to show Cigna is likely to succeed on the merits with respect to its claims for breach of contract.

Missouri courts will enforce a non-competition agreements in limited circumstances that are "demonstratively reasonable." Whelan Sec. Co. v. Kennebrew, 379 S.W.3d 835, 841 (Mo. 2012) (en banc). "A non-compete agreement is reasonable if it is no more restrictive than is necessary to protect the legitimate interests of the employer." Id. at 842 (quoted case omitted). The agreement must be narrowly tailored in terms of time and geography, and must protect legitimate employer interests "beyond mere competition by a former employee." Id. at 841-82. Under Missouri law, "a non-compete agreement is enforceable 'only to the extent that the restrictions protect the employer's trade secrets or customer contacts.'" Id. at 842 (quoting Healthcare Servs. of the Ozarks, Inc. v. Copeland, 198 S.W.3d 604, 610 (Mo. 2006) (en banc)). "The employer has the burden to prove that the non-compete agreement protects its legitimate interests in trade secrets or customer contacts and that the agreement is reasonable as to time and geographic space." Id.

On the current record, the Court finds Cigna has met its burden of establishing that Cigna and Defendant Bricker entered into an enforceable non-competition agreement for which Defendant Bricker received adequate consideration; that the non-competition agreement is designed to protect Cigna's trade secrets and confidential business information; and that the agreement is reasonable as to time and geographic scope. See Church Mut. Ins. Co. v. Sands, 2014

6

WL 3385208, at *3-4 (W.D. Mo. July 9, 2014) (holding a three-year non-compete agreement enforceable; citing House of Tools & Eng'g, Inc. v. Price, 504 S.W.2d 157, 159 (Mo. Ct. App. 1973) (enforcing three-year non-compete agreement where employee salesperson was given extensive information on the employer's customers)); Alltype Fire Prot. Co. v. Mayfield, 88 S.W.3d 120, 123 (Mo. Ct. App. 2002) (finding a two-year limitation on employment reasonable); Mid-States Paint & Chem. Co. v. Herr, 746 S.W.2d 613, 617 (Mo. Ct. App. 1988) ("The employer has protectable interests in trade secrets and customer contacts.").

The Court further finds that Defendant Bricker's employment with CVS Pharmacy would breach the parties' non-competition agreement and, based on the record before the Court, it would be inevitable in her proposed role that she would disclose or use Cigna's trade secrets and/or confidential business information.

The Court declines to rule at this time that Cigna is likely to succeed on the merits with respect to its claims for misappropriation of trade secrets under the Missouri Uniform Trade Secrets Act ("MUTSA").[2] To establish a violation of the MUTSA, a plaintiff must demonstrate "(1) the existence of a protectable trade secret, (2) misappropriation of those trade secrets by Defendants, and (3) damages." Secure Energy Inc. v. Coal Synthetics, LLC, 708 F.Supp.2d 923, 926 (E.D. Mo. 2010).

Cigna has not presented evidence to the Court that Defendant Bricker has misappropriated its trade secrets, only that it is inevitable she will do so if she is allowed to work for CVS Pharmacy. The Court will issue a temporary restraining order based on Cigna's breach of contract claim, Count I of Cigna's Third Amended Complaint. With an expanded record, Cigna may move for

---

[2]Cigna did not move for injunctive relief based on its federal Defend Trade Secrets Act claim in Count III of the Third Amended Complaint.

injunctive relief based on its breach of contract claim and the MUTSA, should the parties proceed to a preliminary injunction hearing.

The Court finds that the remaining Dataphase factors weigh in favor of issuing a temporary restraining order. Missouri courts have recognized that breach of a non-compete agreement may amount to a per se irreparable injury. Osage Glass, Inc. v. Donovan, 693 S.W.2d 71, 74-5 (Mo. 1985). "To show irreparable harm in Missouri an employer need only demonstrate that there is a threat of irreparable harm; the employer is not required to demonstrate that actual damage has occurred." Emerson Elec. Co. v. Rogers, 418 F.3d 841, 846 (8th Cir. 2005) (citing Osage Glass, 693 S.W.2d at 74-75). See also N.I.S. Corp. v. Swindle, 724 F.2d 707, 710 (8th Cir. 1984); Express Scripts, Inc. v. Lavin, No. 4:17-CV-1423 HEA, 2017 WL 2903205, at *8 (E.D. Mo. July 7, 2017) ("The mere violation of a valid non-compete agreement can support an inference of the existence of a threat of irreparable harm."); H&R Block Tax Servs., LLC v. Haworth, No. 4:15-CV-211 SRB, 2015 WL 5601940, at *4 (W.D. Mo. Sept. 22, 2015) ("Defendant is competing against Plaintiff for its current and prospective clients. Monetary relief will not adequately protect Plaintiff's interest in these relationships, and it cannot fully remedy Plaintiff's loss of good will, confidential information and other legitimate business advantage.").

In light of the evidence regarding the nature and scope of Defendant Bricker's position at Cigna, as well as her knowledge of Cigna's confidential information and/or trade secrets, and her hiring by Cigna's direct competitor, CVS Pharmacy, to fill a newly created role specific for her that will place her on CVS Health Corporation's Executive Leadership Team, the Court believes that Cigna would suffer irreparable harm absent a temporary injunction. A temporary restraining order is necessary and proper in light of the balance between that irreparable harm to Cigna, the relatively less-significant harm that the temporary injunction may inflict on Defendant Bricker,

and the public interest in the enforcement of reasonable covenants, especially as the agreements Defendant Bricker signed prohibited her from providing services to a competitor such as CVS Pharmacy or using or disclosing Cigna's confidential and trade secret information, for which she received significant compensation.

Therefore, upon careful consideration of these factors, the Court will grant Cigna's request for a temporary restraining order against Defendant Bricker based on Cigna's claim for breach of contract.  Cigna will be required to give security in the amount of $250,000 to pay the costs and damages sustained by Defendant Bricker in the event she is later found to have been wrongfully restrained.  See Fed. R. Civ. P. 65(c).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Cigna Corporation's motion for a temporary restraining order against Defendant Amy Bricker is **GRANTED**.  (ECF No. 4).

**IT IS FURTHER ORDERED** that pending this Court's issuance of a ruling with respect to Plaintiff's request for a preliminary injunction, Defendant Amy Bricker shall be prohibited from directly or indirectly, alone or in concert with others:

(1) Providing any services to, or for, CVS Pharmacy, Inc., CVS Health Corporation, or any of its entities, or any other business or entity that is engaged in a business similar to, or that competes with, the business of Cigna Corporation, including specifically that Defendant Amy Bricker shall not accept the position of CVS Pharmacy, Inc.'s Chief Product Officer, Consumer Health;

(2) Providing services to, or for, CVS Pharmacy, Inc., CVS Health Corporation, or any of its entities, or any other business or entity that competes with the business of Cigna Corporation, that will likely result in the disclosure of Cigna Corporation's confidential

information to such business or use Cigna Corporation's confidential information on behalf of such business, including specifically that Defendant Amy Bricker shall not accept the position of CVS Pharmacy, Inc.'s Chief Product Officer, Consumer Health;

(3) Divulging, revealing, or otherwise disclosing to CVS Pharmacy, Inc., CVS Health Corporation or any of its entities, or any other person or entity, any trade secrets or confidential information of Cigna Corporation.

**IT IS FURTHER ORDERED** that Cigna Corporation shall post security in the amount of Two Hundred Fifty Thousand Dollars ($250,000) with the Clerk of the Court by **February 24, 2023**, in cash or through a Court-approved surety. See Fed. R. Civ. P. 65(c).

**IT IS SO ORDERED.**

*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this   17th   day of February, 2023.