UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CIGNA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-CV-93 RLW |
| | ) | |
| AMY BRICKER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Amy Bricker and CVS Pharmacy, Inc.'s (collectively "Defendants") joint Emergency Motion to Compel Discovery. (ECF No. 86). Plaintiff Cigna Corporation ("Cigna") filed a response memorandum in opposition, to which Defendants filed a reply. The motion is fully briefed and ripe for review.

### I.     Legal Standard

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in federal which provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"The scope of discovery under Rule 26(b) is extremely broad." Gowan v. Mid Century Ins. Co., 309 F.R.D. 503, 508 (D.S.D. 2015) (citing 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §§ 2007, 3637 (1970)). "Mutual knowledge of all the relevant facts

gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." Hickman v. Taylor, 329 U.S. 495, 507 (1947). Relevancy in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Jo Ann Howard & Assocs., P.C. v. Cassity, 303 F.R.D. 539, 542 (E.D. Mo. 2014) (citation and quotation omitted).

After the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992), St. Paul Reins. Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000)). "The party must demonstrate to the court 'that the requested documents either do not come within the broad scope of relevance defined pursuant to Rule 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" Id. (quoting Burke v. New York City Police Dep't, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)).

## II.     Discussion

The Court has carefully reviewed the motion and the legal memoranda in support and opposition, and grants in part and denies in part Defendants' Emergency Motion to Compel.

**A. Document Request Regarding Trade Secrets**

Defendants move to compel Cigna to respond more fully to Request No. 1 of Defendants' First Request for Production of Documents. In Request No. 1, Defendants asked Cigna to produce the following:

> All documents or communications, including but not limited to calendar entries, meeting minutes, agendas, notes (including hand-written or electronic notes made

2

> or kept by Cigna's Human Resources personnel and/or Senior Leadership team and/or Evernorth's Senior Leadership team, including but not limited to Eric Palmer and Melissa Arkus), and summaries of meetings that Ms. Bricker attended with Cigna and/or Evernorth Senior Leadership, reflecting information you contend constitutes or contains the alleged trade secrets of Cigna or any of its subsidiaries or affiliates that Cigna alleges Ms. Bricker has either misappropriated or will inevitably use or disclose in the course of her employment with CVS Pharmacy and the ownership of all such alleged trade secrets.

(ECF No. 87, Ex. A at 3). In response, Cigna made the following objections:

> Objection. Plaintiff hereby incorporates the General Objections as though the same were fully set forth at length herein. Plaintiff further objects to this Request as overbroad and unduly burdensome in that it seeks all documents and communications, a search for which could fairly return an excessive number of irrelevant, duplicative, and non-responsive communications. Plaintiff further objects to this Request to the extent it seeks materials that are neither relevant nor proportional to the needs of this litigation, taking into account the expedited nature of the proceedings. Subject to and without waiver of these General and Specific objections, Plaintiff will agree to provide representative documents responsive to this Request sufficient to reflect relevant meetings attended by Bricker, such as meeting minutes, agendas, documents circulated in advance of meetings, and PowerPoints and other materials presented during meetings from September 1, 2020 (when Evernorth was created) to January 9, 2023 (Defendant Bricker's date of resignation), to the extent such documents exist.

(ECF No. 87, Ex. A at 3-4).[1]

---

[1] The parties are advised that the Court will not consider general discovery objections. With respect to discovery obligations, the Court's Judge's Requirements, available on the Eastern District of Missouri's website, state:

> The Court will not consider general discovery objections. All objections to written discovery must be stated with specificity, see Rules 33(b)(4), 34(b)(2)(B), Fed. R. Civ. P. For document production, an objection must state whether any responsive materials are being withheld on the basis of the objection. See Rule 34(b)(2)(C), Fed. R. Civ. P.

> For assertions of privilege or work product, for each item of information or document withheld from production in response to a written discovery request, the withholding party must serve a privilege log on opposing counsel. Rule 26(b)(5)(A), Fed. R. Civ. P. The privilege log must be served simultaneously with the response to the written discovery request in which the assertion of privilege or work product is made.

3

Cigna produced documents responsive to Request No. 1. According to Defendants, Cigna produced 18,000 calendar invites containing no substantive information, and 1,300 pages of meeting minutes, agendas, documents circulated in advance of meetings, and PowerPoint presentations.  Defendants argue that the documents contain no substantive content demonstrating confidential information or trade secrets.  Defendant also point to the fact that no hand-written documents or text messages were produced, which were expressly requested.  Defendants argue they have little reason to believe this is a "representative" sample of documents responsive to Request No. 1 and accuse Cigna of cherry-picking documents.  Defendants assert Cigna's response is both underinclusive and unreliable.

The Court agrees the request is overbroad in that it seeks all documents and communications that "reflect[ ] information [Cigna] contend[s] constitutes or contains the alleged trade secrets[.]" It is also unclear: Do Defendants seek all documents relating to trade secrets Defendant Bricker acquired during the course of her employment, or only the trade secrets she acquired at meetings "with Cigna and/or Evernorth Senior Leadership"; and do Defendants seek documents that merely "reflect" that there are trade secrets, or are they asking for documents that actually contain the trade secrets?

In light of the breadth of the request and taking into account the expedited nature of the discovery at this stage in the proceedings, the Court finds it was not unreasonable for Cigna to produce representative samples of documents in response to Request No. 1.  That said, the Court is not in a position to evaluate whether these documents are indeed representative.  The Court has not reviewed the documents Cigna produced and has no way of knowing what documents it did not produce. While it does strike the Court that the production of 18,000 calendar invites may be a document dump and not "representative," Request No. 1 specifically asks for calendar entries.

And, as Defendants state, Cigna produced 1,300 other documents in response to this request. Based on the record before it, the Court denies Defendants' Emergency Motion to Compel with regard to Request to Produce No. 1.[2]

### B. Interrogatory Regarding Trade Secrets

Defendants argue that Cigna's interrogatory response regarding trade secrets was also inadequate. Defendants asked the following in Interrogatory No. 1:

> Identify all Alleged Trade Secrets and all Alleged Confidential Information, and for each: (a) describe the circumstances in which You assert that Ms. Bricker obtained such information; and (b) identify who else within Your organization knows or possesses such information.

(ECF No. 100, Ex. B to Defs.' Mem. In Support of Emergency Mot. to Compel, filed under seal).

Cigna made the following objection to Interrogatory No. 1:

> Objection. Plaintiff incorporates all General Objections as though the same were fully set forth at length herein. Plaintiff further objects to this Interrogatory to the extent it is overbroad, unduly burdensome, and outside the agreed-to scope of expedited discovery in that providing a complete answer using Defendants' definitions would require Plaintiff to respond to at least 20 distinct subparts. This Interrogatory is further objectionable in that it is vague and ambiguous and seeks a full or complete answer that is impossible to give in this format. Subject to and without waiver of the foregoing General and Specific objections, Plaintiff provides the following illustrative, non-exhaustive list of trade secrets and confidential information to which Defendant Bricker had access to during the relevant timeframe.

(Id.) Subject to its objections, Cigna responded to Interrogatory No. 1. Cigna listed thirty-five specific categories of trade secrets Defendants Bricker had access to during her employment and during the relevant time period.

---

[2]The parties are reminded that under the terms of the Pre-Hearing Order dated February 27, 2023, "no party will be permitted to offer any exhibits [at the preliminary injunction hearing] not identified or not submitted by said party for examination by opposing counsel in compliance with [that] Order." (ECF No. 70 at 2).

Defendants argue that Cigna's response is insufficient in that Cigna may not offer broad categories of trade secrets, but rather it must "actually substantiate" its claims and state "precisely what that sensitive, confidential, and trade secrets information is." (ECF No. 87 at 10).

The Court reviewed Cigna's response, which was filed under seal, and does not agree that Cigna offered broad categories of trade secrets only. To prevail, Cigna must ultimately carry the burden of proof to establish that the non-compete agreement at issue in this case "protects its legitimate interests in trade secrets or customer contacts," Healthcare Servs. of the Ozarks, Inc. v. Copeland, 198 S.W.3d 604, 610 (Mo. 2006) (en banc), but Cigna need not detail each and every one of its trade secrets in response to Interrogatory No. 1. The Court finds the list of thirty-five specific categories of trade secrets is sufficient. To require more would be unduly burdensome and there are more appropriate discovery methods to obtain this information. To the extent Defendants require further information regarding Cigna's alleged trade secrets, they can inquire at depositions or serve additional follow-up interrogatories. The Court denies Defendants' motion to compel with regard to Request to Produce No. 1.[3]

**C. Document Request Regarding Other Non-Competition Agreements**

Defendants seeks to compel Cigna to provide documents regarding non-competition agreements it has with other employees. In Request No. 5, Defendants sought the following information:

> All employment agreements from January 1, 2018 to present signed by the "16 active employees bound by [the] non-competition agreement" to which Ms. Bricker is bound as described in the Introduction to Cigna's Third Amended Complaint,

---

[3]The Court recognizes that Defendants would not be able to obtain responses to a second set of written discovery prior to the scheduled preliminary injunction hearing. The Court takes this opportunity to remind the parties of the following: First, at the preliminary injunction hearing, Cigna, not Defendants, must demonstrate that Ms. Bricker has or had access to protectable trade secrets; and second, the March 30, 2023 hearing is a preliminary injunction hearing, not a final trial on the merits of this case.

>including all restrictive covenant agreements, executive retention agreements, and documents and communications by and between any of these 16 individuals and Cigna, its subsidiaries, and affiliates, concerning the negotiation, revision and/or execution of these agreements, including but not limited to the emails from March 2020 and September 2022 referenced in Paragraphs 7-11 of Melissa Arkus's Supplemental Declaration.

(ECF No. 87, Ex. A at 6).

Cigna made the following objection to Request No. 5:

>Objection. Plaintiff hereby incorporates the General Objections as though the same were fully set forth at length herein. Plaintiff further objects to this Request as overbroad and unduly burdensome in that it seeks all agreements, documents, and communications. Plaintiff further objects to this Request to the extent it seeks materials that are neither relevant nor proportional to the needs of this litigation. Subject to and without waiver of these General and Specific objections, Plaintiff will agree to produce contractual agreements with the 16 individuals who signed the same Cigna Corporation Confidentiality, Non-Competition and Non-Solicitation Agreement as Bricker that were in place at the time of Defendant Bricker's resignation. Plaintiff will also produce the March 2020 and September 2022 e-mails referenced in Melissa Arkus's Supplemental Declaration.

(Id.)

Cigna has produced copies of the contractual agreements of the sixteen employees who signed the same Cigna Corporation Confidentiality, Non-Competition and Non-Solicitation Agreement ("the non-competition agreement") to which Ms. Bricker is bound, as well as the email communications Defendants specifically requested. Cigna admits that one of the attachments from these emails was inadvertently omitted and states it will be produced. Cigna further states it has undertaken a search to determine if there are any other responsive email communications related to negotiations of the restrictive covenants in these agreements and will make a supplemental production, if necessary. Further, Cigna states it has culled data from its systems into a spreadsheet that shows when and how the sixteen employees executed their contractual agreements, which will be produced in advance of the upcoming depositions.

The Court grants Defendants' Motion to Compel to the extent that Cigna shall supplement its response and produce communications related to negotiations of the sixteen restrictive covenants agreements or indicate there are none.

### D. Document Request and Interrogatory Regarding Compensation

In Request No. 6 and Interrogatory No. 2, Defendants seek information and documents regarding the compensation of employees within Cigna's organization including the compensation of other high-level employees at Cigna, Evernorth, and Express Scripts. Defendants also seek any documents regarding pay equity audits or analyses. Defendants asked Cigna to produce the following documents in Request No. 6:

> All documents describing or concerning all pay equity audits and/or analyses, compensation audits and/or analyses and/or pay parity audits and/or analyses conducted by or on behalf of Cigna, its subsidiaries, and affiliates relating to or concerning compensation information for Cigna's executive leadership team, Evernorth's senior leadership team, and senior executives within Cigna, its subsidiaries, and affiliates from January 1, 2018 to present.

(ECF No. 87, Ex A. at 6-7)

In Interrogatory No. 2, Defendants asked the following:

> For each member of Cigna's executive leadership team, Evernorth's senior leadership team, and all prior executives who held the role of President of Express Scripts, and/or President and CEO of Express Scripts, from January 1, 2018 to present, describe: (a) annual total compensation actually paid to each such individual, and (b) annual total target compensation for each such individual, and provide all documentation demonstrating same.

(ECF No. 100, Defs.' Ex. B, filed under seal).

Cigna lodged the same objections to both Request No. 6 and Interrogatory No. 1.  Cigna objected as follows:

> Plaintiff incorporates all General Objections as though the same were fully set forth at length herein. Plaintiff further objects to [this Request and Interrogatory] as overbroad, unduly burdensome, and outside the agreed-to scope of expedited discovery as the materials requested are not relevant to any legitimate claim or

8

>   defense pertaining to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. Plaintiff further objects to [this Request and Interrogatory] as an improper attempt to conduct a fishing expedition to find evidence to support Defendant Bricker's intimated pay equity claim.

(ECF No. 87, Ex A. at 6-7; ECF No. 100, Defs.' Ex. B filed under seal).

Cigna produced no documents in response to Request No. 6 and provided no information in response to Interrogatory No. 2. In its response memorandum, Cigna states that it stands by its objections.

Defendants move the Court to compel Cigna to respond to the interrogatory in full and produce all documents responsive to the request. In support of their Emergency Motion to Compel, Defendants argue that the information and documents they seek in Request No. 6 and Interrogatory No. 2 are relevant to the equitable defense of unclean hands. Defendants contend Ms. Bricker was paid substantially less than her male predecessors and counterparts and was unjustifiably denied promotional opportunities based on her sex. Defendants argue that Cigna is barred from enforcing its non-competition agreement and seeking equitable relief from the Court due to its unclean hands, "specifically the sex-based wage inequity Cigna imposed on [Ms. Bricker]." (ECF No. 87 at 13).

The only authority Defendants cite to support application of the unclean hands doctrine here is a forty-three-year-old case that does not involve a covenant not to compete or an employment dispute. In Mahaffy v. City of Woodson Terrace, 609 S.W.2d 233, 238 (Mo. Ct. App. 1980), the Missouri Court of Appeals, applying doctrine of unclean hands, reversed the trial court's entry of an injunction ordering the city to remove barricades blocking the plaintiff's access to a new addition on its property. Mahaffy, 609 S.W.2d at 235. The appellate court found the doctrine applied because the plaintiff's unfinished construction work on a public street, which had been conducted without a permit, precipitated the need for barriers. The facts in Mahaffy, where the

9

defendant city was acting under its police powers to barricade a street, are not analogous to facts of the case at bar. Defendants' citation to Mahaffy is unpersuasive.

There are remedies available for claims of unlawful employment discrimination based on sex. Ms. Bricker has not filed any claims of gender discrimination under federal or state law against her former employer, however. Defendants fail to show that the doctrine of unclean hands is applicable, or that Request No. 6 and Interrogatory No. 2 seek information relevant to any claim or defense in this case. The Court will not compel Cigna to produce documents and information concerning compensation based on this theory.

Defendants also argue that the compensation of Ms. Bricker and other senior Cigna executives is relevant because Cigna has justified the scope of its restrictive covenants based on Ms. Bricker's compensation. The Court agrees that Ms. Bricker's compensation is relevant to this dispute, and whether there is adequate consideration for Cigna's non-competition agreement is at issue. Defendants have not established, however, how the compensation of other senior Cigna executives is relevant to Cigna's claims or Defendants' defenses. Therefore, with regard to Interrogatory No. 2, the Court grants Defendants' Emergency Motion to Compel as it applies to Ms. Bricker only.

In sum, Defendants' Emergency Motion to Compel is denied as to Request No. 6. As to Interrogatory No. 2, the Court will compel Cigna to describe, from January 1, 2018 to present: (1) the annual total compensation actually paid to Ms. Bricker, and (2) the annual total target compensation for Ms. Bricker. Defendants' request that Cigna "provide all documentation demonstrating same" is a document request and not part of a proper interrogatory, and is therefore denied without prejudice.

### E. Attorneys' Eyes Only Designation

Defendants assert in their Emergency Motion to Compel that Cigna produced 19,403 documents, of which 18,843 were designated for Attorneys' Eyes Only (AEO) under the Protective Ordered entered in this case.  According to Defendants, approximately 18,000 of these documents were empty calendar entries.  Defendants argue that Cigna has made a "mockery" of the Protective Order, placing an undue burden on Defendants and the Court.  (ECF No. 87 at 15).  For relief, Defendants ask the Court TO require Cigna to issue new designations for its production or strip all of Cigna's confidentiality designations.

Cigna responds that it did its best to identify and appropriately designate documents subject to the Protective Order in the short time allotted for production, but erred on the side of caution in order to protect its confidential and trade secret information.  Cigna asserts that due to the limited review time available and out of an abundance of caution, it marked calendar entries as AEO because many of those entries may contain embedded agendas that describe confidential and trade secret information.  Cigna also states it has communicated to Defendants that Defendant Bricker may review, but not retain, any document in the production that she authored or received. Cigna further points to the fact that Defendants have not followed the procedure set forth in paragraph 6 of the Protective Order for objecting to confidentiality designations.

The Court agrees that Defendants have not followed the procedures set forth in the Protective Order for challenging the confidentiality designation of a document.  That said, Cigna admits it designated documents as AEO not based on a good-faith belief that they contained information of a "commercially sensitive nature," but because it was under a time restraint and was unable to conduct a proper review to determine whether the documents indeed contained trade secrets.

The Court will direct Cigna to do a proper review and amend its designations. In the future, however, when challenging a confidentiality designation, the parties must comply with the terms of the Protective Order or the Court will summary deny any such challenge.

**F. Request to Reopen Depositions**

Finally, Defendants request in their Reply Memorandum, "as stated during the March 16, 2023 telephonic conference with the Court, that the Court issue an order permitting Defendants to reopen these depositions as needed should Cigna fail to produce documents sufficiently in advance of each deposition." (ECF No. 96 at 7). At this time, the Court will not order that depositions be reopened in this case.

To clarify, the Court expressly stated during the March 16, 2023 telephone status conference that it would not issue a ruling on Defendants' Emergency Motion to Compel prior to the depositions, in light of the fact that Defendants' Motion was filed two business days prior to the scheduled depositions and Cigna had not had the opportunity to respond. The Court stated that if Defendants believed they required the documents at issue in their Emergency Motion to Compel for the scheduled depositions, Defendants could either: (1) move the depositions scheduled for this week until after the Court ruled on their motion which, due to the tight schedule, might entail moving the preliminary injunction hearing; or (2) proceed with the scheduled depositions without a ruling from the Court, and should the Court grant Defendants' motion to compel and require Cigna to produce additional documents, Defendants could move the Court to allow Defendants to reopen the depositions, if necessary. Both Defendants chose the second option.

After Cigna has complied with the terms of this Memorandum and Order and produced additional documents and information, Defendants may move the Court to reopen depositions. Any such motion must detail what additional information is required, and state why the

12

information could not be obtained during the initial deposition. The Court will not issue a blanket order reopening the depositions. If a motion to reopen is granted, the deposition(s) will be reopened for the stated purpose only.

### III. Conclusion

The Court has carefully reviewed Defendants' Motion to Compel and the legal memoranda in support and opposition and finds Defendants' motion to compel should be granted in part. The Court finds that Defendants' request and interrogatory regarding trade secrets are overly broad and, based on the record before it, Cigna has adequately responded to Request No. 1 and Interrogatory No. 1.

With regard to Request No. 5, which seeks documents regarding Cigna's non-competition agreements with other high-level executives, Cigna has represented that it is currently conducting a search to determine if there are any other responsive email communications related to negotiations of the restrictive covenants in these agreements. Cigna shall supplement its response and produce communications related to negotiations of the sixteen restrictive covenant agreements or indicate that there are none.

The Court finds that Defendants have not established that the unclean hands doctrine applies in this case and it will not compel Cigna to respond to Request No. 6. The Court will compel Cigna to answer Interrogatory No. 2 as it applies to Ms. Bricker only.

Although Defendants did not comply with the procedures set forth in the Protective Order for challenging confidentiality designations, the Court will direct Cigna to review and redesignate the calendar entries it provided in response to Defendants' First Set of Document Requests.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Amy Bricker and CVS Pharmacy, Inc.'s joint Emergency Motion to Compel Discovery is **GRANTED in part** and **DENIED in part**. (ECF No. 86). The motion is **GRANTED** as to Document Request No. 5 and Interrogatory No. 2, in that consistent with the terms of this Memorandum and Order, **on or before 5:00 p.m. on March 24, 2023,** Cigna Corporation shall (1) provide email communications related to negotiations of Cigna's non-competition agreements with the sixteen high-level executives identified in Request No. 5, or indicate there are none; and (2) describe, from January 1, 2018 to present (a) the annual total compensation actually paid to Ms. Bricker, and (b) the annual total target compensation for Ms. Bricker. Cigna Corporation shall also review and redesignate, if necessary, the calendar entries it provided in response to Defendants' First Set of Document Requests. In all other respects, Defendants' motion is **DENIED**.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>22nd</u> day of March, 2023.