# United States Court of Appeals
## For The Eighth Circuit

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Maureen W. Gornik**
*Acting Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

June 05, 2024

Nicholas Anaclerio
VEDDER & PRICE
Suite 2600
222 N. LaSalle Street
Chicago, IL  60601-0000

Michael L. Rosen
FOLEY & HOAG
155 Seaport Boulevard
Boston, MA  02210-2600

      RE:  23-2455  Cigna Corporation v. Amy Bricker
            23-2458  Cigna Corporation v. CVS Pharmacy, Inc.

Dear Counsel:

    The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

    Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14-day period for filing permitted by FRAP 40 may be denied as untimely.

                                                      Maureen W. Gornik
                                                      Acting Clerk of Court

HAG

Enclosure(s)

cc:    Risa B. Boerner
         Paul L. Brusati
         Matthew F. Casassa
         Clerk, U.S. District Court, Eastern District of Missouri
         John D. Comerford

Allison E. Czerniak
Gabrielle A. Giombetti
Laura Diss Gradel
James M. Gross
Ellen M. Hemminger
Molly Manning Lens
Scott Daniel Meyers
Emily J. Nash
William Ray Price Jr.
Michael T. Raupp
Jeffrey L. Schultz
Christopher A. Smith
Christopher P. Stief
Elisa Ross Sullivan
Randall Thompson
Honorable Ronnie L. White

District Court/Agency Case Number(s):   4:23-cv-00093-RLW

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Maureen W. Gornik**
*Acting Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

June 05, 2024

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

  RE: 23-2455 Cigna Corporation v. Amy Bricker
     23-2458 Cigna Corporation v. CVS Pharmacy, Inc.

Dear Sir or Madam:

  A published opinion was filed today in the above case.

  Counsel who presented argument on behalf of appellant Amy Bricker and appeared on the brief was Nicholas Anaclerio, of Chicago, IL. The following attorney(s) also appeared on appellant Amy Bricker's brief; Paul L. Brusati, of Saint Louis, MO, Allison E. Czerniak, of Chicago, IL, Ellen M. Hemminger of Chicago, IL, William Ray Price, Jr., of Saint Louis, MO, Jeffrey L. Schultz, of Saint Louis.

  Counsel who presented argument on behalf of appellant CVS Pharmacy, Inc. and appeared on the brief was Michael L. Rosen, of Boston, MA. The following attorney(s) also appeared on appellant CVS Pharmacy's brief; Matthew F. Casassa, of Boston, MA, John D. Comerford, of Saint Louis, MO, Lara D. Gradel, of Boston, MA, James M. Gross, of New York, NY, Emily J. Nash, of Boston, MA.

  Counsel who presented argument on behalf of the appellee and appeared on the brief was Christopher A. Smith, of Saint Louis, MO. The following attorney(s) also appeared on the appellee brief;  Randall Thompson, of Saint Louis, MO, Michael T. Raupp, of Kansas City, MO, Scott Daniel Meyers, of Saint Louis, MO, Elisa Ross Sullivan, of Saint Louis, MO, Gabrielle A. Giombetti, of Philadelphia, PA, Risa B. Boerner, of Philadelphia, PA.

  The judge who heard the case in the district court was Honorable Ronnie L. White.

  If you have any questions concerning this case, please call this office.

                Maureen W. Gornik
                Acting Clerk of Court

HAG

Enclosure(s)

cc: MO Lawyers Weekly

District Court/Agency Case Number(s): 4:23-cv-00093-RLW

# United States Court of Appeals
## For the Eighth Circuit

_____

Nos. 23-2455/23-2458
_____

Cigna Corporation

*Plaintiff - Appellee*

v.

Amy Bricker

*Defendant - Appellant*

CVS Pharmacy, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 14, 2023
Filed: June 5, 2024

_____

Before SMITH, Chief Judge,[1] GRUENDER and GRASZ, Circuit Judges.

_____

---

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024.  *See* 28 U.S.C. § 45(a)(3)(A).

SMITH, Chief Judge.

Amy Bricker, by all accounts, is a highly talented and sought-after corporate executive. In January 2023, she changed jobs, moving from the senior leadership of Cigna Corporation (Cigna) to the senior leadership of CVS Pharmacy, Inc. (CVS). Cigna sued Bricker and CVS in federal district court, seeking enforcement of its non-compete agreement with Bricker. To preserve the status quo and protect Cigna's legitimate business interests, the district court[2] granted a temporary restraining order in February 2023 and a preliminary injunction in June 2023. In these consolidated appeals, Bricker and CVS challenge the preliminary injunction. Seeing no legal or factual error in the district court's analysis, we affirm.

## I. *Background*

From 2010 to 2023, Bricker held senior leadership roles at Express Scripts, Inc., one of the nation's largest pharmacy benefits managers (PBMs). "As a PBM, Express Scripts manages prescription drug benefits programs for employers, federal agencies, public sector entities, unions, health plans, including commercial Medicare, and Medicaid, the military, and other entities . . . ." R. Doc. 208, at 3.

In 2018, Cigna—one of the nation's largest healthcare conglomerates—acquired Express Scripts. Bricker was the senior vice president overseeing supply chain management. Her executive retention agreement had a non-compete provision. Bricker agreed "that during the course of [her] employment with [Cigna], [she] has and will become familiar with [Cigna]'s trade secrets and with other Confidential Information concerning [Cigna] and that [her] services have been and shall continue to be of special, unique, and extraordinary value to [Cigna]." R. Doc. 38-1, at 76. Bricker further agreed that, for one year after employment, she would not work for "any Business Competitor in the United States or in any other country in which [Cigna] conducts business; provided that nothing herein shall restrict [Bricker] from

---

[2]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

-2-

. . . becoming employed, engaged, associated or otherwise participating with a separately managed division or subsidiary of a competitive business." *Id.*

In 2020, Cigna presented a new non-compete agreement to Bricker and asked her to sign it. *See* R. Doc. 50-14. To the extent they were not inconsistent, the new agreement supplemented the old agreement. *See id.* at 10 (acknowledging that "prior Agreements remain in full force and effect"). The new agreement imposed similar geographic restrictions, extended the restricted period from one year to two years, and expanded the field of covered employment from other PBMs to 11 areas—functionally, the entire healthcare sector. *See id.* at 7–8. Bricker had a reasonable opportunity to review the agreement, and the agreement's last paragraph expressly advised her to consult a lawyer before she signed. *Id.* at 10. She signed. Afterward, she was promoted to president of Express Scripts.

As president of Express Scripts, Bricker oversaw Cigna's PBM operations, as well as other activities under the Express Scripts umbrella, including Express Scripts Home Delivery Pharmacy. Bricker also became a member of the Senior Leadership Team. This gave her access and insight into many other aspects of Cigna's business, outside Express Scripts.

In 2022, CVS—also one of the nation's largest healthcare conglomerates—contacted Bricker as part of a national talent search. Two CVS executives met with Bricker and told her that they wanted to bring her into CVS senior leadership, with better compensation and the potential to become CVS's future CEO. Bricker found CVS's offer attractive. She felt that her career progress at Cigna had stalled. Bricker considered the offer and negotiated a contract with CVS to guarantee pay for her first two years, the same term as her non-compete agreement with Cigna.

On January 8, 2023, CVS sent the contract to Bricker. On January 9, Bricker signed the contract and resigned from Cigna. On January 26, Cigna sued Bricker and CVS in federal district court. On February 15, the district court issued a temporary restraining order. And on June 5, it granted a preliminary injunction.

II. *Discussion*

Bricker and CVS bring these appeals, challenging the district court's order that preliminarily enjoins Bricker from working at CVS. Generally, they argue that the non-compete agreement is overbroad, unreasonable, and unenforceable under Missouri law. Particularly, they contend that Cigna's home-delivery pharmacy and CVS's brick-and-mortar pharmacies, where CVS wants to place Bricker, are not business competitors. Jurisdiction exists under 28 U.S.C. §§ 1292 and 1332.[3]

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Its "primary function . . . is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984). Exercising its "equitable discretion," *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), a district court may grant a preliminary injunction when a movant shows "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest," *Winter*, 555 U.S. at 20; *see Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc) (same factors). "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (internal quotation marks and citations omitted).

When a party appeals a district court's preliminary injunction, as Bricker and CVS do here, our standard of review is "layered." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). We review the district court's conclusions of law de novo, its findings of fact for clear error, and its application of the law to the facts for

---

[3]Bricker argues that the federal judiciary lacks diversity jurisdiction because both she and Express Scripts are Missouri citizens. *See* Bricker's Br. at 2–3; 28 U.S.C. § 1332. However, Express Scripts is not a party in this case. Cigna, CVS, and Bricker are the parties; and, among them, there is complete diversity.

-4-

abuse of discretion. *Id.* Because a district court exercises the traditional authority of a chancellor, its discretion to grant or deny a preliminary injunction is broad. *See Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006) ("The district court has broad discretion when ruling on preliminary injunctions."); *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944) (discussing the powers historically held by chancellors and the flexibility of equity). "The district court is accorded deference because of its greater familiarity with the facts and the parties." *Jet Midwest Int'l Co. v. Jet Midwest Grp.*, 953 F.3d 1041, 1044 (8th Cir. 2020).

Based on our review, we conclude that the district court correctly interpreted Missouri law governing non-compete agreements, and its findings of fact were not clearly erroneous. When the district court applied Missouri law to its preliminary factual findings through the prism of the *Winter*/*Dataphase* factors, it did not abuse its broad discretion. Thus, a preliminary injunction was proper.

### A. *Likelihood of Success on the Merits*

Applying the *Winter*/*Dataphase* test, we first address the movant's likelihood of success on the merits. *Winter*, 555 U.S. at 20; *Dataphase*, 640 F.2d at 114. This factor does not singularly control, but it should receive substantial weight in the court's analysis. *Home Instead*, 721 F.3d at 497. A movant shows a likelihood of success on the merits when it demonstrates a "fair chance," not necessarily "greater than fifty percent," that it will ultimately prevail under applicable law. *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003).

Cigna, CVS, and Bricker agree that Missouri law governs Cigna and Bricker's non-compete agreement. *See* R. Doc. 50-14, at 8–9 (choice-of-law clause). Under Missouri law, a non-compete agreement between an employer and employee is enforceable if it is reasonable. *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 (Mo. 2006) (en banc). Reasonableness turns on the unique facts and circumstances of an employer and employee's relationship. The Missouri Supreme Court has explained:

-5-

> The law of non-compete agreements in Missouri seeks to balance the competing concerns between an employer and employee in the workforce. On one hand, employers have a legitimate interest in engaging a highly trained workforce without the risk of losing customers and business secrets after an employee leaves his or her employment. *Copeland*, 198 S.W.3d at 609–10. On the other hand, employees have a legitimate interest in having mobility between employers to provide for their families and advance their careers. *Id.* at 610. Furthermore, although the law favors the ability of parties to contract freely, contracts in restraint of trade are unlawful. *Id.*
>
> In balancing these competing interests, Missouri courts generally enforce a non-compete agreement if it is demonstratively reasonable. *Id.* "A non-compete agreement is reasonable if it is no more restrictive than is necessary to protect the legitimate interests of the employer." *Id.* A non-compete agreement must be narrowly tailored temporally and geographically and must seek to protect legitimate employer interests beyond mere competition by a former employee. Accordingly, a non-compete agreement is enforceable "only to the extent that the restrictions protect the employer's trade secrets or customer contacts." *Id.* The employer has the burden to prove that the non-compete agreement protects its legitimate interests in trade secrets or customer contacts and that the agreement is reasonable as to time and geographic space. *Id.*

*Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 841–42 (Mo. 2012) (en banc).

Here, the district court carefully examined the sealed record and found that Cigna's protected interests are numerous and substantial. They stretch across multiple lines of products and services, present and future, which are "highly confidential" and "not publicly known." *See* R. Doc. 208, at 7–9, 21–22. Moreover, the district court found that Bricker "routinely attended weekly, monthly, and quarterly [Senior Leadership Team] meetings," where executives "across business units" freely "discussed key strategic information and decisions" touching all aspects of Cigna's business. *Id.* at 6. Bricker likely remembers a considerable portion of the protected information that she learned from overseeing her own unit and attending

-6-

these meetings, where other units shared their own protected information. Without Bricker, "[i]t would be difficult, if not impossible, [for CVS] to acquire or duplicate this information. The [district] [c]ourt further f[ound] that if the information were to be disclosed, it would be very valuable . . . ." *Id.* at 23.

If Bricker had chosen to move from Cigna to a company outside the healthcare sector or maybe a healthcare company other than CVS, her intimate knowledge about Cigna's inner workings and immediate future plans might have posed a less serious threat to Cigna's protected interests.[4] However, Cigna and CVS are each other's largest direct competitors. *Id.* at 4–5, 14, 18, 24, 31, 37. The two companies are practically mirror images of one another. The district court found:

> CVS and Cigna have competing PBMs (CVS Caremark v. Express Scripts), pharmacies (CVS Pharmacy v. Express Scripts Home Delivery Pharmacy), specialty pharmacies (Caremark Specialty Pharmacy v. Accredo), health insurance companies (Aetna v. Cigna), and healthcare clinics (MinuteClinic v. MDLIVE). CVS and Cigna also compete for access to drugs, pharmaceutical discounts and rebates, retail advantages, better rates and terms with drug manufacturers, and for the clinical programs they sell their clients.

*Id.* at 4.

Based on Missouri law and the district court's factual findings, we conclude that Cigna met its preliminary burden and demonstrated a "fair chance" that its non-compete agreement with Bricker is reasonable and enforceable. *Heartland*, 335 F.3d

---

[4]*See E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1112–13 (8th Cir. 1969) ("Th[e] protection given to trade secrets is a shield, sanctioned by the courts, for the preservation of trust in confidential relationships; it is not a sword to be used by employers to retain employees by the threat of rendering them substantially unemployable in the field of their experience should they decide to resign. . . . [A]n employer may not restrict an employee's future employment *except by an agreement embodying reasonable terms*." (emphasis added) (applying Iowa law)).

at 690; *Copeland*, 198 S.W.3d at 610. To be sure, the agreement is broad. However, courts applying Missouri law regularly uphold restrictions with two-year durations. *See, e.g.*, *Whelan*, 379 S.W.3d at 846–47 ("Considerable precedent in Missouri supports the reasonableness of a two-year non-compete agreement . . . ." (collecting cases)); *Alltype Fire Prot. Co. v. Mayfield*, 88 S.W.3d 120, 123 (Mo. Ct. App. 2002) ("The term of two years . . . is supported by the overwhelming weight of case authority." (collecting cases)). "Courts applying Missouri law also readily enforce geographical limitations that span nationwide." *Express Scripts, Inc. v. Lavin*, No. 17-CV-01423-HEA, 2017 WL 2903205, at *4 (E.D. Mo. July 7, 2017) (collecting cases). Furthermore, this case is unlike the typical case in which a Missouri court concludes that a non-compete agreement is unenforceable. The typical case does not involve a high-level executive. *See, e.g.*, *Brown v. Rollet Bros. Trucking Co.*, 291 S.W.3d 766, 771, 779 (Mo. Ct. App. 2009) (freight dispatcher); *Payroll Advance, Inc. v. Yates*, 270 S.W.3d 428, 431, 436 (Mo. Ct. App. 2008) (payday loan manager).

CVS and Bricker's strongest authority—and the case to which they pointed at oral argument—is *Victoria's Secret Stores, Inc. v. May Department Stores Co.*, 157 S.W.3d 256 (Mo. Ct. App. 2004). In *Victoria's Secret*, the chairman of Foley's Department Stores received an offer to become the chief operating officer of Victoria's Secret Stores. *Id.* at 258. Foley's parent, May Department Stores, sought to block the job change by enforcing a non-compete agreement. *Id.* at 259. Victoria's Secret and the employee brought a declaratory judgment action against May. *Id.* The Missouri trial court found that Foley's and Victoria's Secret did not substantially compete. *Id.* at 260. Victoria's Secret "market[ed] sex appeal for the fashion conscious" and sold lingerie to "younger women, specifically in their mid-twenties, who are willing to pay higher prices." *Id.* at 259. In contrast, Foley's stores were "traditional department stores that s[old] a broad array of products, consisting of hundreds of merchandise categories and thousands of brands." *Id.* Foley's average customer was a woman in her forties, and "[i]ntimate apparel" accounted for only three percent of sales. *Id.* Because Victoria's Secret and Foley's "d[id] not compete in any material or meaningful way," the trial court entered judgment in favor of Victoria's Secret and the employee. *Id.* at 260. While the non-compete agreement

-8-

was not "per se unreasonable or unenforceable," it was inapplicable to the facts of the case. *Id.* The Missouri Court of Appeals affirmed. *Id.* at 264.

*Victoria's Secret* is not analogous to the present case. In *Victoria's Secret*, the trial court found only three-percent overlap between the companies. *Id.* at 260. Here, the district court found that Cigna and CVS compete "in virtually every aspect" of their businesses. R. Doc. 208, at 4. CVS and Bricker's proposed contrasts between CVS and Cigna are unavailing. In particular, we accept, as not clearly erroneous, the district court's finding that CVS's brick-and-mortar pharmacies and Cigna's home-delivery pharmacy directly compete for the same customers. *Id.*

At this early stage, when the record has not been fully developed, we cannot say that Cigna and Bricker's non-compete agreement is broader than necessary to protect Cigna's legitimate interests. *See Whelan*, 379 S.W.3d at 841–42. Courts applying Missouri law have enforced two-year restrictions, they have enforced expansive geographic restrictions, and they have not declined to enforce restrictions on high-level executives in Bricker's shoes. The kind of work an executive does is different from the work of an ordinary employee. All things considered, there is a "fair chance" Cigna will ultimately prevail. *Heartland*, 335 F.3d at 690.

### B. *Likelihood of Irreparable Harm*

The second *Winter/Dataphase* factor is the likelihood that a movant will suffer irreparable harm if the court does not grant a preliminary injunction. *Winter*, 555 U.S. at 20; *Dataphase*, 640 F.2d at 114. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The mere "possibility of irreparable harm" will not suffice. *Winter*, 555 U.S. at 22. "To demonstrate irreparable harm, [the movant] must show harm that is certain and great and of such imminence that there is a clear and present need for equitable relief." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 951 (8th Cir. 2023) (internal quotation marks omitted).

As stated above, Missouri law on non-compete agreements contemplates two principal harms an employer might suffer: loss of trade secrets and loss of customer contacts. *Whelan*, 379 S.W.3d at 842. Cigna expresses concern about loss of trade secrets. As with Missouri's definition of reasonableness, Missouri's definition of trade secrets is multifaceted. A court applying Missouri law must consider:

> (1) the extent to which the information is known outside of [an employer's] business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Copeland*, 198 S.W.3d at 611 (quoting *Cont'l Rsch. Corp. v. Scholz*, 595 S.W.2d 396, 401 (Mo. Ct. App. 1980)).

Here, the district court specifically listed and analyzed the above factors. *See* R. Doc. 208, at 21–23. When Bricker testified, she conceded knowledge of one of Cigna's trade secrets. *Id.* at 23. The district court found that Bricker likely knows additional secrets. *See id.* ("The [c]ourt does not find this claim [of knowing only one trade secret] to be credible . . . ."); *Adzick v. UNUM Life Ins. Co. of Am.*, 351 F.3d 883, 889 (8th Cir. 2003) ("When findings are based on determinations regarding the credibility of witnesses, . . . such findings can virtually never be clear error."). Whether Bricker knows only one trade secret (as she admitted in her testimony) or multiple trade secrets (as the district court found), "[i]t is not the number of trade secrets taken that determines whether the threat of irreparable harm exists. The fact that a single trade secret may be disclosed is enough." *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 503 (5th Cir. 1982). A single trade secret suffices because "once a trade secret is disclosed, its secrecy is lost forever." *APAC Teleservices, Inc. v. McRae*, 985 F. Supp. 852, 866 (N.D. Iowa 1997) (Melloy, C.J.).

-10-

Our circuit has conflicting precedent about the proper standard for reviewing the existence of a trade secret. *Compare AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 971 (8th Cir. 2011) ("Though the existence of a trade secret is a fact-intensive inquiry, it is ultimately a question of law determined by the court."), *with Wyeth v. Nat. Biologics, Inc.*, 395 F.3d 897, 899 (8th Cir. 2005) ("We review the district court's findings of fact for clear error. We must first decide whether the district court erred in holding that Wyeth's Brandon Process is a trade secret." (citation omitted)); *Sigma Chem. Co. v. Harris*, 794 F.2d 371, 373–74 (8th Cir. 1986) (reviewing for clear error); *Sandlin v. Johnson*, 152 F.2d 8, 11 (8th Cir. 1945) ("On all this evidence, it cannot be said that the trial court's finding that no trade secret was involved is clearly erroneous."). When a panel is confronted with an intra-circuit split, we follow our older cases over our newer ones. *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc). Our older cases direct review for clear error in determining the existence of a trade secret.[5]

Reviewing for clear error, we accept the district court's findings that Cigna has trade secrets protectable under Missouri law; Bricker has knowledge about one or more of these secrets; and, without a preliminary injunction, a substantial danger exists that Bricker would advertently or inadvertently disclose one or more of these secrets to CVS. Furthermore, we agree with the district court that money damages would not adequately compensate Cigna for disclosure. *See Harry Brown's*, 563 F.3d at 319. The district court concluded, and we also conclude, that money damages

---

[5]We note that Missouri appellate courts use a substantial evidence standard, instead of a clear error standard, when reviewing trial-court factual findings in equity actions. *See, e.g.*, *City of Greenwood v. Martin Marietta Materials, Inc.*, 311 S.W.3d 258, 263 (Mo. Ct. App. 2010); *Steamatic of Kan. City, Inc. v. Rhea*, 763 S.W.2d 190, 194 (Mo. Ct. App. 1988). But our "standard of appellate review depends on federal rather than state law. Federal law provides that [f]indings of fact shall not be set aside unless clearly erroneous." *Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806 (7th Cir. 1995) (internal quotation marks omitted); *see DeJoria v. Maghreb Petrol. Expl., S.A.*, 935 F.3d 381, 390 (5th Cir. 2019) ("[O]ur appellate standard of review is governed by federal law, even in this diversity case.").

-11-

would be "impossible to measure" and "inadequate to remedy Defendant Bricker's violations" given the quantity and quality of insider knowledge about Cigna that Bricker likely has. R. Doc. 208, at 35–36. By granting a preliminary injunction now, rather than waiting for a disclosure later, the district court did not abuse its broad discretion to enforce the non-compete agreement.

### C. *Balance of Equities*

The third *Winter/Dataphase* factor is the balance of equities. *Winter*, 555 U.S. at 20; *Dataphase*, 640 F.2d at 114. When applying this factor, the key question is whether the movant's likely harm without a preliminary injunction exceeds the nonmovant's likely harm with a preliminary injunction in place. *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020). This balance is tentative. "The purpose . . . is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam) (citation omitted).

Here, the district court found that Cigna will suffer extraordinarily high ("impossible to measure") damages if Bricker discloses Cigna's trade secrets to CVS. R. Doc. 208, at 35. Meanwhile, the harms that Bricker and CVS suffer under a preliminary injunction are comparatively small. When Bricker moved from Cigna to CVS, CVS agreed to pay Bricker's full salary—about $10 million—for the two-year duration of Cigna's non-compete agreement, even if Bricker does no work for CVS. Under Missouri law, "employees have a legitimate interest in having mobility between employers to provide for their families and advance their careers." *Whelan*, 379 S.W.3d at 841. Bricker's guaranteed compensation provides adequate support, and its payment does not inflict substantial harm on CVS.

Bricker raises concern that two years of not working could impair her career advancement. Her new employer, CVS, appears to represent that it will not penalize her in any way. Bricker's concern about her career advancement is legitimate, but it does not persuade us. The district court rightly observed:

> Defendant Bricker is a sophisticated party who fully understood the restrictions she agreed to when she accepted millions of dollars in compensation and equity awards from Cigna. The protections Defendant Bricker negotiated for herself in her contractual agreements with CVS make it clear that Defendant Bricker knew and understood the scope of the [non-compete agreement]. Despite having knowledge and understanding of her contractual obligations, Defendant Bricker made a deliberate decision to join a direct competitor. *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997 (8th Cir. 2011) (balance of harms weighs in plaintiff's favor where injury to defendant was "largely self-inflicted").

R. Doc. 208, at 37.

The district court did not abuse its broad discretion in balancing the equities and determining that they favor Cigna at this stage. Cigna could suffer substantial financial harm without a preliminary injunction, CVS suffers comparatively little financial harm with a preliminary injunction, and Bricker suffers little or no financial harm in either instance. Any other consequences that flow from Bricker's choice to sign Cigna's non-compete agreement and then switch to CVS are consequences of her own making. "[Bricker] was not in an unequal bargaining position when [s]he contracted with [Cigna] for a covenant not to compete which was adopted by both [parties] in their written agreement." *AEE-EMF, Inc. v. Passmore*, 906 S.W.2d 714, 720 n.2 (Mo. Ct. App. 1995) (allowing a non-compete agreement to be enforced for three years). Bricker "cannot be heard to complain that she signed the [agreement] under duress. She made the agreement with her eyes wide open." *Martino-Catt v. E.I. duPont Nemours & Co.*, 317 F. Supp. 2d 914, 927 (S.D. Iowa 2004) (applying circuit law and enforcing an employee's release of ERISA claims).

### D. *Public Interest*

The fourth *Winter*/*Dataphase* factor is the public interest. *Winter*, 555 U.S. at 20; *Dataphase*, 640 F.2d at 114. We have previously held, and Missouri case law also holds, that the public interest includes "protecting freedom to contract through enforcement of contractual rights and obligations." *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1145 (8th Cir. 2007); *see Sleep No. Corp. v. Young*, 33 F.4th

1012, 1019 (8th Cir. 2022) ("[T]he public has an interest in enforcing contractual obligations . . . ."); *Home Shopping Club, Inc. v. Roberts Broad. Co.*, 989 S.W.2d 174, 179 (Mo. Ct. App. 1998) ("It is in the public interest to enforce contractual rights and obligations."). The public interest and Missouri law both favor judicial enforcement of contracts according to their own terms. *See BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 706 F.3d 888, 895 (8th Cir. 2013) (citing *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 670 (Mo. 2010) (en banc) (per curiam)).

When courts too readily hold contracts unenforceable, they undermine the predictability necessary for all persons to privately order their affairs. *See Est. of Schoffman v. Cent. States Diversified, Inc.*, 69 F.3d 215, 219 n.10 (8th Cir. 1995) ("Predictability of results is of great importance in the contractual field . . . ."). Predictability is no less necessary in equity than in law. *See Lonchar v. Thomas*, 517 U.S. 314, 323 (1996) ("[C]ourts of equity must be governed by rules and precedents no less than the courts of law." (quoting *Missouri v. Jenkins*, 515 U.S. 70, 127 (1995) (Thomas, J., concurring))).

The district court properly determined "that the enforcement of reasonable restrictive covenants serves the public interest," that "Missouri courts recognize the public interest in enforcing all contracts," and "that the public interest supports the issuance of injunctive relief." R. Doc. 208, at 38–39. We perceive no abuse of discretion in the district court's weighing of the public interest factor.

### III. *Conclusion*

When a district court correctly interprets state law and does not clearly err in its factual findings, we will rarely disturb its grant of a preliminary injunction to enforce a non-compete agreement. *See Nordin v. Nutri/Sys., Inc.*, 897 F.2d 339, 345–46 (8th Cir. 1990). Here, the district court correctly interpreted Missouri law and made detailed factual findings that are not clearly erroneous. Applying the four *Winter*/*Dataphase* factors, the district court concluded that they favor Cigna at this

stage. The district court did not abuse its broad discretion by granting Cigna's request for a preliminary injunction. Accordingly, we affirm.[6]

_____

---

[6]Alternatively, Bricker argues that the district court should have declined to enforce the non-compete agreement because Cigna has unclean hands. Specifically, Bricker alleges that Cigna discriminates among its executives based on their sex, that Cigna's sex discrimination stalled the progress of her career, and that is why she breached her agreement and left Cigna for CVS. *See* Bricker's Br. at 13–14, 67–72. "The doctrine of unclean hands is a defense that bars one who has acted wrongfully with respect to the subject of the suit from obtaining an equitable remedy." *Sangamon Assocs., Ltd. v. Carpenter 1985 Fam. P'ship, Ltd.*, 165 S.W.3d 141, 145 (Mo. 2005) (en banc). This is a notoriously "hoary and murky doctrine," whose contours are not always clear. *Nelson v. Emmert*, 105 S.W.3d 563, 568 (Mo. Ct. App. 2003) (quoting *Osterberger v. Hites Constr. Co.*, 599 S.W.2d 221, 229 (Mo. Ct. App. 1980)). If a district court, exercising its broad discretion, reasonably concludes that an equitable "defense is probably frivolous, the court can disregard it, or at least delay consideration of it until trial." *Mantek Div. of NCH Corp. v. Share Corp.*, 780 F.2d 702, 708 n.10 (7th Cir. 1986). Here, the district court did not abuse its broad discretion when it reasonably refused "to have a mini trial on a Title 7 case." R. Doc. 153, at 115; *see Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.*, 959 F.3d 903, 911 (8th Cir. 2020) ("We review the district court's decision to deny an equitable defense for an abuse of discretion."). Nonetheless, the district court must hear and consider Bricker's unclean hands defense when it decides whether to grant permanent injunctive relief. *See Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931, 937 (8th Cir. 2002) (affirming the denial of an unclean hands defense and allowing the district court to "defer[] the issue . . . for trial on the merits").

-15-